## HENRY ZACHS *v.* ZONING BOARD OF APPEALS OF THE TOWN OF AVON
### (14170)

SHEA, CALLAHAN, COVELLO, F. X. HENNESSY and MENT, Js.

---

Argued January 11—decision released April 16, 1991

*Michael A. Zizka,* with whom were *Robert C. Hunt, Jr.,* and, on the brief, *Mary A. Glassman,* for the appellant (defendant).

*Lewis K. Wise,* for the appellee (plaintiff).

SHEA, J. In this appeal from a decision of the defendant, the zoning board of appeals for the town of Avon, which had upheld a cease and desist order issued by

its assistant zoning enforcement officer, the trial court rendered judgment for the plaintiff, Henry Zachs. The board has appealed, claiming that the court erroneously substituted its judgment for that of the board on factual issues concerning a radio communications tower situated on a ridge of Talcott mountain in Avon, which is being used by Zachs for commercial purposes. We affirm the judgment.

It is undisputed that the tower presently maintained by Zachs was erected approximately in the middle of the 1950-60 decade. Prior to 1957 the Avon zoning regulations provided that a "radio broadcasting station" was a permitted use in a "residential and agricultural zone," in which the property was situated. The tower was erected by James Work, an electrician, at approximately the time his residence on the same property was constructed. Work initially may have used the tower for communications relating to his electrical business.[1]

Work also leased space on the tower to allow the installation of separate antennae by others wanting access to a private radio communications system. At the hearing Zachs claimed that two of these lessees had commenced using the tower for the purpose of a two way radio system prior to an amendment of the zoning ordinance in 1957 to require a special permit for a radio broadcasting site. Zachs acquired the tower leasing business from Work about 1970 and later bought the property, including the tower and the residence.[2]

_____

[1] The extent of Work's personal use of the tower is unclear. The zoning enforcement officer claimed that the tower originally was "an accessory use to the residential dwelling that Mr. Works [sic] had." Zachs claimed that "at all times it was being used as a commercial enterprise for the transmission of radio messages."

[2] Zachs testified at the hearing that he bought the property in order to own the tower and that he had agreed to allow Work to occupy the residence for his lifetime. At the time of the hearing the residence was not occupied, but Zachs' son was planning to move into the house.

Since then, additional users have leased space on the tower and installed their separate antennae and appurtenant equipment, which is housed in the garage. Currently there are eleven antennae on the tower.

The most recent change with respect to Zachs' property was the installation of an emergency generator to provide electricity in the event that the regular electric service fails. A complaint from a neighbor about the noise from this generator apparently precipitated the investigation that resulted in the cease and desist order.

This dispute arose when Donald Griswold, the assistant zoning enforcement officer for the board, on January 5, 1989, notified Zachs by mail that he was "in violation of expanding the nonconforming use of the transmission tower" on his property and had also "installed and hooked up the generator and electrical wiring and panels without a permit." The letter stated that "[t]he original tower and equipment was to service the owner and two other people" and that "[n]othing beyond that had ever been permitted or approved for the commercial type of operation you are now using it for." Zachs was "ordered to cease the use of the generator and restore the nonconforming tower and equipment back to its original use, namely an accessory use to the residential dwelling that Mr. Works [sic] had."

Zachs appealed from the cease and desist order to the board, which affirmed the order, declaring only that Griswold "did not error [sic] in issuing the cease and desist order." In sustaining Zachs' appeal from this ruling, the trial court concluded that: (1) Zachs, as the owner of a one-half interest in the property,[3] was

---

[3] The record does not disclose the identity of the owner or owners of the other one-half interest.

aggrieved by the decision of the board; (2) the tower enjoyed the status of a nonconforming use; (3) such use had not been "extended or expanded," as prohibited by the Avon zoning regulations; and (4) the installation or use of the generator to provide electricity when a power failure occurs did not constitute a change in the use of the tower or the land. In appealing from that judgment, the board claims that the court substituted its own factual determinations for those of the board with respect to both whether a nonconforming use of the premises existed and whether any such use had been expanded.

## I

We conclude that the trial court should not have addressed the issue of the existence of a nonconforming use of the premises, because the only issue before the board, as indicated by the terms of the cease and desist order, was whether Zachs was "expanding the nonconforming use of the transmission tower on the property." This order did not challenge the existence of the "original tower and equipment . . . to service the owner and two other people" as a nonconforming use, but assumed that the installation had that status and charged that its use had been expanded in violation of the zoning ordinance. During the public hearing held by the board, reference was made to a letter written by the town attorney to Griswold cautioning him about his characterization of the transmission tower as a "nonconforming use" in the cease and desist order. In a record of a colloquy between two board members at the hearing, it was indicated that, because the issue of nonconforming status was under consideration by the town attorney, that issue "would be one we would not decide at our meeting tonight." The remarks of the various board members as contained in the minutes of the meeting at which the cease and

desist order was upheld indicate that the only issue decided was whether the assumed nonconforming use had been expanded.

We agree with Zachs that "fundamental principles of due process" would be violated if we were to uphold the cease and desist order, as the board now urges, on the ground that Zachs had failed at the hearing to prove that the tower was a nonconforming use, when the terms of the order and the members of the board assumed its existence without challenge. Because the issue of nonconforming status was not properly before the board and was not considered when its decision was rendered, that issue should not have been addressed by the trial court in deciding Zachs' appeal. Accordingly, the findings made by the court regarding the existence of a nonconforming use must be disregarded as being outside the scope of the appeal. We need not, therefore, consider further the board's claim that those findings trespassed upon its fact-finding prerogative.

## II

The claim that the trial court disregarded the board's findings with respect to whether Zachs had expanded the nonconforming use that the board assumed to have existed prior to the 1957 amendment of the zoning regulations is somewhat misguided. The board articulated no factual findings in making its decision but simply "upheld" the action of the zoning enforcement officer, stating as a "reason" that it had "determined that the zoning enforcement officer did not error [sic] in issuing the cease and desist order." The minutes of the board meeting at which the vote was taken, however, disclose that the majority of the board members voted to sustain the order on the ground that the use existing in 1957 had been expanded since that date. Thus the board may be deemed to have made such a finding implicitly. The remaining issue on appeal, there-

fore, is whether that finding is supported by substantial evidence. *Huck* v. *Inland Wetlands & Watercourses Agency,* 203 Conn. 525, 541, 525 A.2d 940 (1987).

The cease and desist order stated that "[t]he original tower and equipment was to service the owner and two other people." At the public hearing, these users were identified as James Work, the owner, who resided in the house adjacent to the tower, and two business entities, Mercer and Dunbar and E.B. McGurk, which leased space on the tower for placement of their separate antennae.

Except for the recent installation of the generator, which is discussed in Part III of this opinion, the only evidence that the nonconforming use of the tower had been "extended or expanded" in violation of the zoning regulations[4] was that at the time of the hearing on April 27, 1989,[5] the number of persons who maintained antennae on the tower had increased to eleven, fourteen separate electric meters had been installed on the exterior of the garage, in which various transmission equipment is housed, and the number of transmitters in the garage had increased to thirteen. The tower itself had not been altered since its erection except for the number and placement of antennae thereon. An adjoining property owner testified at the hearing that servicemen currently visited the property much more frequently than in 1958, when he had first lived in that area.

The trial court concluded that this evidence was inadequate to support a finding that the nonconform-

___

[4] Section III C.4 of the Avon zoning regulations provides: "No nonconforming use, and no building containing a non-conforming use, shall be extended or expanded."

[5] The hearing began on March 23, 1989, but was continued until the next meeting of the zoning board of appeals on April 27, 1989. After completion of the hearing, the board also voted on that date to deny Zachs' appeal from the cease and desist order.

ing use of the tower had been "extended or expanded," as the board had implicitly found, but proved only a lawful intensification of such use. The board argues on appeal that whether the use had been expanded or intensified presented a factual issue within its prerogative as the trier of facts to decide. The sufficiency of the evidence to support a finding, however, clearly presents a question of law. Practice Book § 4061; *General Electric Supply Co.* v. *Southern New England Telephone Co.*, 185 Conn. 583, 441 A.2d 581 (1981). There is no dispute in this case about the subordinate facts on which the board presumably relied in making its determination that the nonconforming use had been expanded.

The board claims that it was not obliged to credit the evidence presented by Zachs of commercial use of the tower prior to the 1957 amendment. Nothing was presented at the hearing, however, to contradict that evidence, and it was confirmed by the cease and desist order itself, which referred to the original tower and equipment as being used "to service the owner and two other people," both of whom were identified at the hearing as business lessees of space on the tower. In the discussion among the board members that preceded their vote to uphold the order, there is no indication of any dispute concerning the nature or extent of the use that existed before the 1957 amendment.

"We have previously held that a mere increase in the amount of business done pursuant to a nonconforming use is not an illegal expansion of the original use." *Helicopter Associates, Inc.* v. *Stamford,* 201 Conn. 700, 716, 519 A.2d 49 (1986); *Guilford* v. *Landon,* 146 Conn. 178, 183, 148 A.2d 528 (1954). "There must be a change in the character of the existing use in order to bring it within the prohibition of the zoning ordinance." *Salerni* v. *Scheuy,* 140 Conn. 566, 571, 102 A.2d 528

(1954). We agree with the trial court that none of the evidence presented to the board would justify a conclusion that the character of the nonconforming use of the tower and appurtenant equipment had changed, despite the increase since 1957 in the number of users from three to eleven and the related addition of more equipment having the same purpose as that originally installed. These additions cannot reasonably be viewed as altering the character of the original use as a "radio broadcasting station," as permitted by the zoning regulations prior to the 1957 amendment.

In deciding whether the current activity is within the scope of a nonconforming use consideration should be given to three factors: (1) the extent to which the current use reflects the nature and purpose of the original use; (2) any differences in the character, nature and kind of use involved; and (3) any substantial difference in effect upon the neighborhood resulting from differences in the activities conducted on the property. See *McKemy* v. *Baltimore County,* 39 Md. App. 257, 269–70, 385 A.2d 96 (1978); *Jasper* v. *Michael A. Dolan, Inc.,* 355 Mass. 17, 23, 242 N.E.2d 540 (1968); 6 P. Rohan, Zoning and Land Use Controls § 41.03 [3]. In this case the evidence before the board does not indicate any change in the nature and purpose of the use of the tower since 1957, because it was then being used for leasing antenna space to persons seeking access to a private radio communications system, the same purpose for which it is used today. The only physical changes that have occurred are that eight additional antennae, consisting of horizontal metal rods a few feet in length, project from the tower, additional transmitters have been installed in the garage, and more electrical service meters have been placed on the exterior wall of the garage. Such changes cannot reasonably be said to involve differences in the character of the non-

conforming use rather than increases in the volume of business within the scope of the original use.

The evidence of adverse effects upon the neighborhood from the increase in the number of persons using the tower and the related facilities is sparse and was presented mainly by the adjoining property owner. In addition to his testimony concerning increased equipment servicing activity, he had written a letter to the board that was read at the hearing. He complained in this letter that he frequently heard "voices from the equipment itself," had trouble with telephone interference and with the operation of his garage doors, and could hear servicemen talking on their radios. No expert evidence on the effect of the tower on telephones or garage door openers was presented. Two letters from other property owners in the area complained generally that the continued commercial use of Zachs' property in a residential neighborhood was inappropriate. In the discussion among the board members before they voted, no reference was made to any of this evidence. There is no indication of any complaint concerning the tower during the period of more than thirty years that had elapsed since its erection until a neighbor complained of the noise produced by the recently installed generator. We conclude that the evidence does not indicate that the increased use of the tower since 1957 has resulted in adverse effects upon the neighborhood so drastic as to warrant a finding that the nonconforming use had been extended or expanded beyond its original scope.

## III

The trial court concluded that the emergency generator that had been recently installed on the property was not being utilized to change the use of the property and that the zoning regulations did not prohibit the use of a generator in a residential area. The gener-

ator is not housed inside the two story garage with the other electrical equipment. A fuel tank for the generator is also located outside the garage.[6] At the hearing there was testimony that the purpose of the generator was to make electric power available in the event that the supply from the utility company should fail. Zachs testified that "[t]he generator exercises for a half hour once a week usually . . . noon time" and otherwise "goes on only when the electricity fails." He also indicated that he would install a muffler on the generator and erect a fence in order to reduce the noise level. This testimony has not been disputed.

"[T]he fact that improved and more efficient instrumentalities are utilized in pursuit of the use does not exclude it from the category of an 'existing use,' provided these are ordinarily and reasonably adapted to make that use available to the owner, and the original nature and purpose of the undertaking remain unchanged." *DeFelice* v. *Zoning Board of Appeals,* 130 Conn. 156, 162, 32 A.2d 635 (1943). "This principle is subject to the requirement that the new method be one that is ordinarily and reasonably adapted to make the original use available to the owner and that the original nature and purpose of the undertaking remain unchanged." *Connecticut Sand & Stone Corporation* v. *Zoning Board of Appeals,* 150 Conn. 439, 443, 190 A.2d 594 (1963). We agree with the trial court that the installation of the generator is sanctioned by these precedents. The board has not even attempted to explain how this additional equipment can reasonably be deemed to have changed the "original nature and purpose of the undertaking." Id.

---

[6] A letter of the adjoining property owner refers to two large natural gas tanks and a large generator. A photograph of the installation is labeled "gas tank [and] gen. unit."

The board has also failed to challenge the conclusion of the trial court that the use of a generator in a residential zone is not prohibited by the Avon zoning regulations. If the installation of an emergency generator in a residential zone is permissible, it cannot be said to expand the nonconforming use that existed previously.

As the trial court observed, zoning regulations are not the only restraints upon the use of property. Other ordinances may exist that prohibit unreasonable noise or impose restrictions on the location or size of structures. In addition, the common law prohibits a use of land that constitutes a nuisance. The present case does not provide an appropriate occasion for addressing these concerns, because the only issue is whether the existing nonconformity has been increased significantly by the recent addition of the generator. We agree with the court that the evidence before the board does not support such a finding.

The judgment is affirmed.

In this opinion the other justices concurred.