[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This appeal involves the use of property located at 357 Bantam Road in the Town of Litchfield owned by the plaintiff, Joseph DiBlasi.
The DiBlasi property has a building located thereon consisting of about 6,000 square feet. The building was constructed in 1957 by the Connecticut Light Power Company together with site improvements sufficient for the parking of the equipment which was used by the Connecticut Light Power Company for off-site work. The building housed areas separately dedicated to the maintenance and repair of equipment, the storage of parts and materials which were to be incorporated into the power distribution system and an area dedicated for administrative offices and limited public access.
On or about July 22, 1970 the Town of Litchfield adopted zoning regulations and a zoning map. The DiBlasi property was placed in a residential zone and continues to be so zoned. Hence, as of July 22, 1970 the use of the DiBlasi property by the Connecticut Light Power Company became a legally existing nonconforming use.
The property was purchased by Katherine B. Anderson on July 26, 1978 and was occupied by J.O. Anderson Company, plumbing and heating supplies, and thereafter was purchased by Joseph DiBlasi on February 3, 1986. From the time of its purchase in 1978 by Katherine B. Anderson to the date of the public hearing conducted by the Litchfield Zoning Board of Appeals on January 28, 1991, the property has been used and occupied by J.O. Anderson Plumbing Heating Co. and by White Birch Construction Co. as the site from which each of these construction companies conduct their business activities. CT Page 936
Under date of September 4, 1990, the plaintiff, Mr. DiBlasi, submitted an outline of a lease proposal to the State of Connecticut, Judicial Department-Adult Probation Division for a lease of 2,000 square feet of office space with the option for an additional 2,000 square feet as vacated by other tenants.
On October 11, 1990, Ms. Edith D'Averso, Land Use Administrator for the Town of Litchfield notified Mr. DiBlasi that "any change of use of the above-captioned property is subject to the review and approval of the Litchfield Planning and Zoning Commission."[1] On October 12, 1990 Mrs. Linda L. Bongiolatti, First Selectman of the Town of Litchfield, directed a certified letter to Mr. Daniel Kerr, Leasing Agent for the Connecticut Department of Public Works, re: Joseph DiBlasi-White Birch Construction Co.[2] On October 15, 1990, Ms. D'Averso again notified Mr. DiBlasi that he must apply to the Planning and Zoning Commission for "any change of use" and stated that "in order to avoid any distress to the parties involved, the State, the Town or to you, please be sure to make application to the Litchfield Planning Zoning Commission before further lease negotiations." After receiving a letter from Mr. DiBlasi,[3] Ms. D'Averso wrote on October 22, 1990 stating in part that "any lease negotiations undertaken by you without the sanction of the Litchfield Planning and Zoning Commission will be done at your own risk". Faced with these ultimatums, Mr. DiBlasi filed an application for change of use on October 23, 1990. The application described the use as "offices".
The application was considered at the commission meeting on November 5, 1990. The application "for a change of use (Adult Probation Office)" was denied "because it creates a more intensive use and, at present, does not address the sewage disposal needs or the traffic and pedestrian safety improvements".
On December 12, 1990, the plaintiff appealed the decision to the defendant Zoning Board of Appeals which held a public hearing on January 28, 1991. At its meeting on February 25, 1991 the Board voted to sustain the decision of the Commission. The appeal was denied, "based on the fact that we see nothing wrong with what Planning and Zoning did; they were within their scope, within the realm of their responsibilities and I feel they did what they felt was best for the community." This appeal to this court followed on March 19, 1991.
 I
The plaintiff is required to plead and prove aggrievement. Hickey v. City of New London, 153 Conn. 35, 37 (1965). The plaintiff has established that he is the owner of the real property subject of this appeal, and that he is aggrieved by the Board's decision as he is the owner of said real property located at 367 Bantam Road, Litchfield and the applicant before the Commission. CT Page 937
The plaintiff as owner has demonstrated in the record a "specific, personal and legal interest in the subject matter of the decision" and that "this specific, personal and legal interest has been specifically and injuriously affected by said decision" in that he has been denied a specific business opportunity, a long term lease with the State of Connecticut. Further, the market value of said real property is at risk due to the inability to rent or sell said property for office use. It is uniformly recognized that an owner of real property affected by a decision is an "aggrieved person" and entitled to appeal. Primerica v. Planning and Zoning Commission, 211 Conn. 85, 92-95 (1989); Hall v. Planning Commission, 181 Conn. 442, 444.
 II
The basic underlying issue is whether or not the existing building constructed in 1957 may be used for commercial office use. The existing building is 6,000 more or less square feet in total area. There have been no additions or exterior alterations which have resulted in an increase in the square footage of the building from 1957 to the present time and since then it has been continuously used for a number of commercial office and/or retail uses.
On July 22, 1970 the Town of Litchfield adopted zoning regulations pursuant to Connecticut General Statutes Sections 8-2 and 8-3. The Litchfield zoning regulations and zoning map provide that the lot and building is in a residential district.
Pursuant to General Statutes Sec. 8-2, zoning regulations shall provide for the continuation of uses in existence as of the effective date of the regulations. Section 8-2 states, in pertinent part:
 Such regulations shall not prohibit the continuance of any nonconforming use, building or structure existing at the time of the adoption of such regulations.
Pursuant to the statutory mandate the Litchfield zoning regulations provide for the continuation of such nonconforming uses. The sections of the Litchfield Zoning Regulations pertinent to this appeal are as follows:
 ARTICLE II, SECTION 2 DEFINITIONS NONCONFORMING USE
 Use of a building or of land that did not, at the time of the adoption of these regulations or relevant amendments, conform to these regulations.
 ARTICLE VI, SPECIAL REGULATIONS SECTION 1 — NONCONFORMING BUILDINGS AND USES
1. Any building or use of land or building legally existing CT Page 938 at the time of the adoption of these regulations or of any amendment thereof, which does not conform to the provisions of these regulations for the use and area requirements of the district in which it is located, shall be designated a nonconforming use. (Emphasis added)
 5. A nonconforming use may be continued, changed to a conforming use, or changed to a use which is less intensive in character than the present nonconforming use. A nonconforming use may be extended or expanded, provided that such extension or expansion shall not exceed 25% of the total existing floor area of the nonconforming use or shall not cover more than 25% of a nonconforming lot. Any change, extension or expansion of a nonconforming use shall require additional off-street parking if necessary to conform to the requirements of Article VI, Section 3.
From 1957 to 1970 and continuing to the present time, no one has ever questioned that the building as constructed in 1957 could be used for commercial office use. During 1990 the property owner and the State of Connecticut proposed that the building be leased to the State of Connecticut, Department of Adult Probation. The office use of the property was to remain. The proposal was to change the occupier or user of the property. It was not to change the pre-existing or nonconforming use of the property nor to increase the size or square footage of the building. Only the occupant would change.
The Planning and Zoning Commission and the Zoning Officer misidentified the proposal as a proposal to extend or expand a present nonconforming use. The Planning and Zoning Commission required the property owner, under threat of immediate legal court enforcement action pursuant to General Statutes Sec. 8-12, to file an application for the proposed use pursuant to the zoning regulations, Article VI, Special Regulations Section 1 — Nonconforming Buildings and Uses. It would appear to the court that since there was to be no change in use, only in the user, no such application was legally required. However, in view of the legal threats made upon Mr. DiBlasi, one can readily understand that he had little choice, especially since the lease proposal required "a certificate of occupancy by the appropriate municipal authority."
A review of the record establishes that the Litchfield Planning and Zoning Commission acted in an arbitrary and illegal manner in denying the application by Mr. DiBlasi for office use of his property and, therefore, the defendant Board should have reversed the Commission's decision. There was no request to enlarge or change the use. The Commission's action was based solely on the identity of the user. In fact the petition in opposition states:
 WE, THE UNDERSIGNED, ARE EXTREMELY CONCERNED ABOUT THE PROPOSED MOVE OF THE ADULT PROBATION OFFICE TO THE WHITE BIRCH CT Page 939 CONSTRUCTION COMPANY BUILDING ON ROUTE 202 WHICH IS IN OUR RESIDENTIAL (R-80) NEIGHBORHOOD. ALSO THE PROXIMITY OF THIS PROPOSED OFFICE TO THE HIGH SCHOOL AND THE MIDDLE SCHOOL SHOULD BE A MAJOR CONCERN TO EVERYONE. (Emphasis added.)
Return of Record, Item 28, Petition Protesting Mr. DiBlasi's Application.
This appeal does not involve the extension of an existing nonconforming use,[4] but rather its continuation. In Melody v. Zoning Board of Appeals, 158 Conn. 516, the Supreme Court held that the defendant Board was in error in ruling that a proposed intensification in use would constitute an enlargement or extension of a nonconforming use. The court stated that Connecticut law does not permit consideration of the number of business transactions. It is the use, not the volume of business or the number of business transactions, that is controlling. As stated at page 520, the court set forth its holding as follows:
 Under Sections 3.8.8 and 3.9.3, the plaintiffs explicitly have a permitted use so long as it can be described as the use `existing on the effective date of this regulation.' The term `existing use' is usually employed by legal authorities with relation to the concept of nonconforming use so that, in this frame of reference, the phrase is related in point of time to the use which existed at the time of the enactment of the zoning regulation prohibiting such uses. DeFelice v. Zoning Board of Appeals, 130 Conn. 156, 32 A.2d 635; Haller Baking Co.'s Appeal, 295 Pa. 257, 145 A. 77. In the DeFelice case (p. 161), we have stated, in defining the words `existing use,' that we mean a utilization of the property so that it may be known in the neighborhood as being employed for a given purpose; that neither the extent nor the quantity nor the quality of the use which may be permitted to continue is prescribed by those words; and that it is only required that the use must have existed. The court is not generally required to speculate as to the number of acts or business transactions necessary to constitute an existing use. See also 101 C.J.S., Zoning Section 184. Although the defendant in its brief goes into great detail concerning the square footage of the plaintiffs' present and proposed new buildings, the number of lifts and bays currently existing and planned and the size of new oil and gasoline tanks, it is not disputed that, even after the proposed improvements, the plaintiffs' property will continue to be used for the same purposes as it was used in 1949 and earlier.
The Supreme Court in Helicopter Associates v. City of Stamford,201 Conn. 700, again ruled that it is not pertinent to speculate on the number of business transactions or volume to constitute an existing use. The "known in the neighborhood" test is again reiterated. In this case, CT Page 940 it is conceded that there is a nonconforming use of the plaintiff's building. The Commission and Board decisions were based upon the idea that the Connecticut Adult Probation Department would constitute a change in use. In the case of Zachs v. Zoning Board of Appeals, 218 Conn. 324, the only evidence of a "change in use" or "extension" or "expansion" of a nonconforming use consisted of the following: "the number of persons who maintained antennae on the tower had increased to eleven, fourteen separate electric meters had been installed on the exterior of the garage, in which various transmission equipment is housed and the number of transmitters in the garage had increased to thirteen. . .[and] servicemen currently visit the property much more frequently than in 1958." Zachs, supra at 330-31. In the present case, as in Zachs, "[t]here is no dispute. . . about the subordinate facts on which the board presumably relied in making its determination that the nonconforming use had been expanded." Zachs, supra at 331. Similarly, in the present case there is nothing on the face of the record to indicate a dispute concerning the nonconforming office use of Mr. DiBlasi's building prior to the proposed Probation Department office use.
The Zachs court also stated that:
 We have previously held that a mere increase in the amount of business done pursuant to a nonconforming use is not an illegal expansion of the original use. . . .There must be a change in the character of the existing use in order to bring it within the prohibition of the zoning ordinance. . .We agreed with the trial court that none of the evidence presented to the board would justify a conclusion that the character of the nonconforming use of the tower and appurtenant equipment had changed, despite the increase since 1957 in the number of users from three to eleven and the related addition of more equipment having the same purpose as that originally installed. These additions cannot reasonably be viewed as altering the character of the original use as a `radio broadcasting station,' as permitted by the zoning regulations prior to the 1957 amendment.
Zachs, supra at 331-32. (Citations omitted.)
In Zachs, there were minor physical changes. Our Supreme Court concluded: "Such changes cannot reasonably be said to involve differences in the character of the nonconforming use rather than increases in the volume of business within the scope of the original use."
In the present case there is no physical change. There is nothing in the record to support any difference in the character of the office use. The Commission and Board relied solely on an implied finding of an increase in the volume of people visiting the probation office and generally expressed concerns of traffic, public safety and sewage disposal. Return of Record, Item 26 at 2, 3, Minutes of November 5, 1990 meeting of Litchfield Planning and Zoning Commission. See Cioffoletti v. CT Page 941 Planning and Zoning Commission, 24 Conn. App. 5; Gilbertie v. Zoning Board of Appeals, 23 Conn. App. 444.
 III
A review of the record reveals what was transpiring in Litchfield concerning the proposal to locate the adult probation office at 367 Bantam Road. During early October, 1990, the Litchfield town officials first learned of the plan to relocate the probation office from Torrington to the Bantam Road building. Return of Record Item 2, 10/12/90, Letter from First Selectman to CT. Dept. of Public Works; Return of Record Item 3, 10/15/90 Letter from Edith D'Averso to Joseph DiBlasi. The probation office was immediately perceived to be an undesirable user or worse. From this point forward, there was no fair discussion of the continuation of a nonconforming office use at this building. See, e.g., Return of Record Item 26, supra at 1. The Town of Litchfield responded with an all out campaign in an effort to derail the lease agreement. See, e.g. Return of Record Item 2, supra; Return of Record Item 3, supra; Return of Record Item 5, 10/22/90 Letter from Edith D'Averso to Joseph DiBlasi.
The C.L.P. office use was an acceptable office use; the construction office use was an acceptable office use; the plumbing supply office use was an acceptable office use. However, the adult probation office use was considered as constituting a change in use. There is no basis for such a distinction in Connecticut law. There is no basis for such a distinction under the Litchfield zoning regulations. The zoning regulations do not provide a definition of "office use". Black's Law Dictionary defines office as a "place for the regular transaction of business or performance of a particular service." There is no support anywhere for the position advanced by the Commission or the Board that the probation office use constituted a "change of use." The Commission and the Board considered this matter on the basis of a perceived undesirable user and did not deal with this matter as a use of the building.
There is nothing in the record to suggest that the State employees who would physically occupy the building were undesirable. The only reasonable inference to be drawn is that town officials and citizens of Litchfield were concerned that undesirable individuals who had run afoul of the law would be coming to Litchfield to report to their probation officer. There is nothing in the record to suggest that these unknown citizens are a threat or a danger to the community. Rather, it is more reasonable to conclude that those who do report are on the road to rehabilitation and present no threat. Those who fail or refuse to report may be a threat, but their absence could not be of concern to Litchfield.
The court finds that the Litchfield Planning and Zoning Commission abused its discretion and acted in an arbitrary and illegal manner in denying the plaintiff's application to continue to use his property at 357 Bantam Road for office use, and therefore the defendant Board of CT Page 942 Appeals was in error in not reversing the Commission decision. For the reasons stated, the appeal is sustained.
PICKETT, J.