[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Elizabeth Hall, Zoning Administrator of the Town of Salisbury, Connecticut ("the Town"), commenced this action against the defendant, Peter Brazzale. Mr. Brazzale owns property located at 97-99 Lincoln City Road in the Town, also known as Tax Map 10, Lot 33-34 ("lot 33-34"). The underlying facts of this action are as follows.
On June 8, 1959, the Town adopted zoning regulations which regulated the storage of construction contractor's equipment in a residential zone. See, e.g., Brazzale v. Zoning Board of Appeals, DN CV-90 0051606. On February 16, 1989, the regulations pertaining to the storage of construction equipment were amended to allow contractors to apply for a special permit for the storage of their equipment. Salisbury Zoning Regulations 249.4. The defendant's application for a special permit pursuant to 249.4 was denied by the Salisbury Planning Zoning Commission ("the Commission") and, on July 25, 1989, the Town issued a cease and desist order relating to the violation of 249.4 due to Mr. Brazzale's storage of contractor's equipment without a special permit. See Brazzale, supra, 1. On September 28, 1989, the Town's Zoning Board of Appeals upheld the issuance of the Cease and Desist Order and, on December 10, 1991, the court, Dranginis, J., dismissed Mr. Brazzale's appeal from that decision. Brazzale, supra. On May 17, 1991, because the defendant had failed to comply with said order, the plaintiff applied to this court for a temporary and permanent injunction.
After hearing testimony on July 18, 1991, this court retained jurisdiction over this matter but:
 [R]emand[ed] to the [Salisbury] Planning Zoning Commission on the issue of whether Mr. Brazzale had a pre-existing, nonconforming use on the subject property. If the Planning Zoning Commission determines that there is a pre-existing, nonconforming use, then that issue will be moot, however, the enforcement officer may seek review of that determination here. If the Planning 
Zoning Commission determines that there is no preexisting, nonconforming use, then that issue will be pending before this court. CT Page 3975
On September 5, 1991, the Commission commenced ten and one-half hours of public hearings on the aforementioned issue and, on November 21, 1991, the Commission issued its findings. On December 3, 1991, said findings were filed in this court.
At the public hearings, the Commission heard sworn testimony from fifteen (15) individuals and accepted and examined forty-eight (48) exhibits in evidence. Report and Findings of the Commission ("Report"), p. 1.
The Commission found that from the late 1930's until January 1941, lot 33-34 was the principal and only place of business for the Brazzale Company. Report, p. 2. In 1941, the Brazzales purchased lot 41 and moved the contractor's equipment there. In 1953, the Brazzales purchased lot 25-1, which became the principal place for storage of the Brazzale equipment and material. The Commission determined that, as a consequence of these purchases, equipment and material storage at lot 33-34 became "incidental and subordinate to both lots 41 and 25-1, but Brazzale did however on occasion continue to store materials and equipment at 33-34 at different times throughout the year." Report, p. 2.
The Commission then found that, in 1959:
 [T]he original nature and purpose of use of lot 33-34 was for incidental and occasional use for storage of both materials and equipment. The use of lot 33-34 was secondary to the principal business locations at lots 41 and 25-1 for storage of equipment and materials. All dispatching, invoicing, and related everyday business activity occurred at lot 41, not 33-34. Everyday storage of equipment was at lot 25-1 not 33-34. (per P. Brazzale's testimony from 9/5/91 hearing transcript pg. 9, 10, 11, 38, and 40). (Emphasis added.)
Report, p. 2.
The Commission further found that, in 1959, lot 34 had two residential buildings with a few accessory out buildings, and lot 33 had a small barn for the storage of materials. Report, p. 3. "The small barn was built for Peter V. Brazzale. This change brought lot 33 to a more conforming use (residential in an RR1 zone) and the lot was used less for incidental and secondary storage of contractor's equipment than at the time zoning was enacted." Report, p. 3.
This ancillary use:
 [O]f lot 33-34 by the Brazzale Construction business continued through 1984 when in June, 1984 Brazzale asked CT Page 3976 the PZ for permission to move his contractor's business from its then existing location in the R20 zone (lots 41 and 25-1) to an RR1 zone (residential). (Exh. 14) This request was withdrawn before the Planning and Zoning Commission could act on it.
Report, p. 3.
In 1984, Mr. Brazzale's principal business operation moved from lot 25-1 to Millerton, New York and, in 1985, lot 41 was sold. Report, p. 3. Lot 33-34 continued to be used as secondary and incidental for the Brazzale business, and the Commission found that said incidental use was never abandoned. Report, p. 3. However, in May, 1988, the business moved to lot 33-34 from Millerton, New York and, thereafter:
 [T]here was a marked departure from the original nature and purpose of the non-conforming use of lot 33-34 as it existed in 1959. The character and purpose of use of lots 33-34 changed not by natural growth of lot 33-34 as an ancillary location, but rather by its conversion to the principal storage facility for a business whose principal place of business had always been located somewhere else. It now became the ONLY site for storage for ALL of the Brazzale Construction equipment and materials. The amounts and size of equipment stored on an everyday basis changed significantly and substantially. The occasional storage on lots 33-34 of some of the equipment in 1959 (exh 6E) now has changed to continuous everyday storage of the ENTIRE list of equipment in 1991. Also, see for comparison the aerial photos of 1956, 1978, 1980, 1985, and 1990. (exh. 16, 39, 41). The natural growth of the Brazzale's business occurred on lots 41 and 25-1 in 1959 to 1984 and at Millerton, N.Y. from 1984-1988 at those principal places of business, not lot 33-34. When lot 33-34 became the principal place of business in May 1988, it inherited all the growth over the years from the other three locations.
Report, p. 4.
The Commission concluded that, while contractor's equipment was stored on lot 33-34 as of June 8, 1959, when zoning was enacted, this use was minimal, secondary, and incidental to the principal place of business at lots 41 and 25-1 and later at the Millerton, N.Y. site. The Commission:
 [F]ound that the present use is not a continuation of the use as a secondary site for equipment and material storage. This secondary, periodic, and incidental use CT Page 3977 which characterized the non-conforming use in 1959 has been converted to a principal, continuous storage site for equipment and materials and the use of the premises as the principal site of the business. [The Commission] find[s] this to be a change in the basic character of use as it was known in the neighborhood, and therefore a change in the use, rather than merely an intensification of a prior, non-conforming use. The current character and level of use has been caused not by natural growth of the activities undertaken in 1959 on lot 33-34, but rather by its conversion to a principal storage facility and principal place of business for a business whose principal place of business and storage had always been somewhere else.
Report, pp. 4-5.
In its Report, the Commission states that, at the time zoning was adopted, Mr. Brazzale owned 12 pieces of equipment, and that at any one time no more than a few pieces of said equipment were stored on lot 33-34 in its capacity as a secondary and incidental storage site. Report, p. 5. Thus, the Commission determined that the legal, nonconforming use Brazzale has on lot 33-34 is to store on that site at any one time no more than three (3) pieces "of the sort of equipment represented by the equipment listed on Exhibit 12." Report, p. 5. Finally, the Commission found that Mr. Brazzale could apply for the requisite permit pursuant to Zoning Regulations 249.4 should he desire to use lot 33-34 as his principal place of business and his principal place for storage of contractors' equipment. Report, pp. 5-6.
On January 3, 1992, the defendant submitted a brief in which he contends that the Commission's finding that his present use of lot 33-34 constitutes a change in the character of the 1959 use, rather than an intensification of that use, "constitutes a question of law which should be decided only by the Superior court."
On January 10, 1992, the plaintiff submitted a brief in which she maintains that the Commission's finding that the defendant's legal, nonconforming use is limited to the storage of "no more than three pieces of the sort of equipment represented by the equipment listed on Exhibit 12" should be adopted here. The plaintiff further claims that if the defendant wants to store more than these three pieces of equipment, he can apply to the Commission for the requisite permits pursuant to Zoning Regulations 249.4. Consequently, the plaintiff contends that the Cease and Desist Order should be enforced unless and until the defendant makes such permit application.
Since the Commission acted in this matter in a legislative, CT Page 3978 rather than in an administrative, capacity. Parks v. Planning 
Zoning Commission, 178 Conn. 657, 660, 425 A.2d 100 (1979). Consequently, this court is not at liberty to substitute its judgment for that of the Commission. Frito-Lay. Inc. v. Planning Zoning Commission, 206 Conn. 554, 572-73, 538 A.2d 1039 (1988).
A nonconformity is defined as a "use or structure prohibited by the zoning regulations but . . . permitted because of its existence at the time that the regulations are adopted." Adolphson v. Zoning Board of Appeals, 205 Conn. 703, 710, 535 A.2d 799
(1988). The rule concerning the continuance of a nonconforming use "protects the `right' of a user to continue the same use of the property as it existed before the date of the adoption of zoning regulations." Cioffoletti v. Planning Zoning Commission,24 Conn. App. 5, 8, 584 A.2d 1200 (1991). Non-conforming uses should not be allowed to increase, but should instead be abolished or reduced to conformity as soon as possible. Adolphson, supra; Helbig v. Zoning Commission, 185 Conn. 294, 306, 440 A.2d 940
(1981).
To be nonconforming, the use must be (1) lawful; and (2) in existence at the time the zoning regulations making the use nonconforming were enacted [here, 1959]. Cummings v. Tripp,204 Conn. 67, 91-92, 527 A.2d 230 (1987); Helicopter Associates, Inc. v. Stamford, 201 Conn. 700, 712, 519 A.2d 49 (1986). To qualify as an "existing use," the premises must be utilized in such a manner as to be known in the neighborhood as used for a given purpose, Cummings, supra, 92, that is, "the premises have been adapted for a given purpose, but the premises must also have been employed within that purpose." Helicopter Associates, supra, 713-14. (Citations omitted.) In addition, the use must be actual and not merely contemplated. Id., 713.
"As the party claiming the benefit of a nonconforming use [Mr. Brazzale bears] the burden of proving a valid nonconforming use in order to be entitled to use the property in a manner other than that permitted by the zoning regulations." Cummings, supra, 82-83. The burden is on the plaintiff to establish that the defendant's activities amount to an illegal extension of a nonconforming use. Id., 95. A change in the character of a use constitutes an unlawful extension of a prior use. Zachs v. Zoning Board of Appeals, 218 Conn. 324, 331 (1991). Mere increase in amount of business does not amount to an illegal expansion. Id.; Cummings, supra, 96. Nor does the use of improved and more efficient instrumentalities change the nature and purpose of the nonconforming use. Zachs, supra, 332.
In deciding whether the activity in question is within the scope of a nonconforming use, three factors should be considered: "(1) the extent to which the current use reflects the nature and CT Page 3979 purpose of the original use; (2) any differences in the character, nature and kind of use involved; and (3) any substantial difference in effect upon the neighborhood resulting from differences in the activities conducted on the property." Id. "Not every intensification of a nonconforming use constitutes an impermissible extension of such use." Planning Zoning Commission v. Craft,12 Conn. App. 90, 96, 529 A.2d 1328 (1987) cert. denied, 205 Conn. 804,531 A.2d 937 (1987). The owner does not, however, have the right to substantially add to or change the prior use. Id. "The legality of an extension of a nonconforming use is essentially a question of fact." Helicopter Associates, Inc., supra, 716. (Emphasis added.)
The Commission found that there has been a change in the character of lot 33-34, see, e.g., Zachs, supra, 331-32; Report, supra, pp. 4-5. Consequently, because this court cannot substitute its judgment for that of the Commission, Frito-Lay, supra, 572-73, and because the Commission's findings appear to support their conclusions, this court finds that the defendant does not have a preexisting, nonconforming use consistent with the current use of lot 33-34. Plaintiff is thus entitled to a permanent injunction prohibiting defendant from storing more than 3 pieces of construction equipment on lot 33-34 without a permit issued pursuant to the Salisbury Zoning Regulations.
SUSCO, JUDGE