[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
FACTS
The Church of the Blessed Sacrament owns a parcel of land at 322 Circular Avenue in Hamden. In 1964, after receiving appropriate site plan approval, the church constructed a school CT Page 1099 building on the parcel for use as a junior high school. Under the zoning regulations in effect at that time, the school constituted an educational use which was permitted as of right in that district. The Church of the Blessed Sacrament subsequently operated the school known as the Reverend Daniel J. Barry Junior High School until June of 1992. In June of 1992, the school was closed for financial reasons and the evidence is clear that the parish did not intend to reopen Barry Junior High School as a parish run full service junior high school. After the junior high school was closed, the parish continued to use the building for religious education holding formal classes several days a week. The church also maintained the director of religious education's office in the building. Throughout 1992 and 1993 the church reviewed various proposals for utilization of the former Barry Junior High School property. In July of 1993, the parish of The Blessed Sacrament entered into an agreement to lease the property to the City of New Haven. The City of New Haven intended to use the property as a regional magnet high school to be known as the Hyde Leadership School. In July of 1993, the defendants, Frank and Lisa Fucci, and other neighbors wrote to the zoning enforcement officer requesting that he issue a cease and desist order to prevent the planned opening of the Hyde School.
The enforcement officer Joseph J. Venditto refused to issue the order and responded by saying:
 "After studying all of the material I have concluded that the conversion of the junior high school into the high school does not constitute a change in use. Section 721 of the Hamden Zoning Regulations does not distinguish between junior high and high schools, both of which are secondary schools. All schools are treated the same.
 The `new intended use' [which was claimed in a letter from the defendants' attorney] is merely a continuation of the existing use. Schools were permitted in that zone in 1964. Even though the zoning designation has changed, schools are still a permitted use. The fact that the junior high school closed in June of 1992 might be relevant if the school were a nonconforming use, but it has no bearing on the extension of a conforming use." CT Page 1100
R. 18
The Fuccis then appealed the ZEO determination to the Zoning Board of Appeals claiming that the ZEO had improperly failed to require a special use permit for the Hyde School. A public hearing on the matter was held on August 19, 1993. The record makes clear that the vast majority of participants at that public hearing opposed the Hyde School in the proposed location. The record is also clear that to some extent many participants at the public hearing were as displeased by the closing of the Barry School as they were by the opening of the Hyde School. Following the public hearing, the Zoning Board of Appeals passed a motion by a vote of 4 to 1 which read as follows:
 "1. The parking as shown on the applicant's lease shows a change from the site plan that was approved in 1964. The changes make it not in compliance to the site plan that was approved.
 2. Section 802 specifically, `no building or structure shall be erected, added to, or structurally altered and no use, or reuse, shall be established until approved by the commission or town planner as required . . .'"
R. 3. Minutes of 8/19/93 meeting.
A month later the Zoning Board of Appeals amended its minutes adding the following:
 "Due to the discontinued use for approximately a fourteen month period, he considered this a reuse. They must go before planning and zoning for site review."
R. 1. Minutes of 9/23/93 meeting.
The zoning enforcement officer had ruled that the Hyde School could operate on the location and the Zoning Board of Appeals overturned that decision and directed the City of New Haven and The Blessed Sacrament Parish to apply for a permit to operate the school. CT Page 1101
The court would note parenthetically that this permit was eventually granted by the Hamden Planning and Zoning Commission and its granting of the permit is the subject of an appeal entitled FrankFucci v. Hamden Planning and Zoning, Docket No. CV94 0356380-S (X20). This court has also heard that appeal which may to some extent be affected or even mooted by the court's action in this case.
AGGRIEVEMENT
The appellant the Parish of The Blessed Sacrament is the owner of a parcel known as 322 Circular Avenue, Hamden on which it built the school building in question in 1964. The appellant City of New Haven has a lease to the property. Because the decisions of the Zoning Board of Appeals directly affects the appellants use of the property, the appellants Blessed Sacrament Parish and City of New Haven are aggrieved.
DISCUSSION
Section 802 of the Hamden regulations provides:
 "No building or structure shall be erected, added to, or structurally altered and no use, or reuse shall be established until approved by the commission or town planner, as required, and until a zoning permit has been issued by the zoning officer (ZEO) or other authorized official."
Section 803 provides that a building which is erected or altered cannot be occupied until a certificate of compliance is issued by the ZEO.
Much of the argument at the public hearing concerned the question of whether or not the action before the commission was a "reuse" within the meaning of § 802. "Reuse" does not appear to be defined in the Hamden Zoning Regulations. It does appear to be a concept which is locally analyzed as dealing with an interruption in use, rather than an abandonment of a use.
At one time it was common in Connecticut for local regulations to provide that the interruption of nonconforming uses for a period of time had the effect of terminating the use. At a time when a nonconforming use could be terminated by simple nonuse, without CT Page 1102 actual abandonment, there may have been little practical difference between the common concept of "nonconforming use" and the Hamden concept of "reuse". However, in 1989 the legislature in adopting Public Act 89-277 added language to § 8-2 of the Connecticut General Statutes. The statute had provided "such regulations shall not prohibit the continuation of any nonconforming use, building or structure existing at the time of the adoption of such regulation." Public Act 89-277 added, immediately following the quoted language, additional language which reads "such regulations shall not provide for determination of any nonconforming use solely as a result of nonuse for a specified period of time without regard to the intent of the property owner to maintain that use."
The court is somewhat confused by the fact that none of the parties to the dispute seem to maintain an entirely consistent position on the question of whether the building involved is or is not a nonconforming use. This confusion is heightened when one reads the parties positions in the later appeal, Fucci v. Hamden.
Those parties in favor of allowing the operation of the Hyde School appear to argue that the Barry Junior High School was a permitted use as of right and the Hyde School is a permitted use as of right. They concede that between the commencement of the operation of the Barry School and the proposed commencement of the operation of the Hyde School, there had been an amendment to the Hamden regulations which requires a special permit for this school or educational use. The Hyde School proponents, while conceding the regulatory change as they must, appear to argue that since the school use is a use permitted as of right under both the old and new regulations the requirement for a special permit has no application to the instant case.
The opponents of the Hyde School appear to argue that the requirement for a special permit prevents the operation of the Hyde School unless it is a continuation of a nonconforming use which began with the Barry Junior High School. The opponents would then argue either that the Hyde School is different in nature so that it is not a continuation of the nonconforming use or that the nonconforming use has been abandoned.
Ordinarily nonconforming uses are uses which commence as of right and continue after an amendment in the regulation which would otherwise prohibit the use in a particular zone. None of the parties to this litigation cite absolutely clear authority for the effect upon an existing use of a regulatory change which continues CT Page 1103 to permit a use in a zone, but only after obtaining a special permit.
Clearly the opponents of the Hyde School's operation would rely on Zachs v. Zoning Board of Appeals of Avon, 218 Conn. 324
(1991), for the claimed proposition that an existing use is rendered nonconforming by the requirement for a special permit in the same way that it would be rendered nonconforming by a regulatory change which prohibited the use entirely. Although the court agrees that there is some support for the stated proposition in Zachs, Zachs falls short of standing for the proposition cited by the opponents of the Hyde School. In Zachs the radio towers which were the subject of the dispute were built as of right. Subsequently, the regulations were changed so that a special permit would be required for radio towers. The zoning enforcement officer ordered a cessation of certain tower activity in the belief that it was an expansion of a nonconforming use. The local regulatory agency and the zoning enforcement officer assumed that the radio towers involved were a nonconforming use but disagreed on the question of whether or not certain activities were an expansion. The trial court chose to examine the question of whether the towers were or were not a nonconforming use. The Supreme Court held:
 "We agree with Zachs that the `fundamental principals of due process' would be violated if we were to uphold the cease and desist order, as a board now argues, on the grounds that Zachs had failed at the hearing to prove that the tower was a nonconforming use, where the terms of the order and the members of the board assumed its existence without challenge. Because the issue of nonconforming status was not before the board and was not considered when its decision was rendered this issue should not have been addressed by the trial court in deciding Zachs' appeal. Accordingly, the findings made by the court regarding the existence of a nonconforming use must be disregarded as being outside the scope of the appeal." Zachs at 329.
This court finds the Zachs opinion instructive in two regards. First, although the existence of the nonconforming use was not before the trial court in Zachs, there does appear to be an implicit assumption by the Supreme Court that a change of CT Page 1104 regulations incorporating a requirement for a special permit may render an existing use nonconforming. Equally important, the Supreme Court directly held that a trial court may not examine the existence of a nonconforming use when the regulatory agency had not considered the question.
On the question of whether a change in regulation requiring a special permit can produce the need for nonconforming use protection the court also notes the Appellate Court's holding inCioffoletti v. Planning and Zoning Commission, 24 Conn. App. 5
(1991). There the plaintiffs, who operated a commercial sand and gravel business under a valid nonconforming use, challenged a zoning regulation passed by the defendant Town of Ridgefield. The regulation in question would require a special permit for the operation of the sand and gravel business in the future. Its effect would be to terminate the plaintiff's nonconforming use after four years. The trial court rendered judgment for the plaintiffs from which the defendant appealed and the Court held that because the challenged regulation attempted to prohibit an established nonconforming use, the trial court properly found it to be illegal as applied to the plaintiff's property. It appears to this court that the Cioffoletti decision reasonably supports the proposition that a regulatory change which requires a special permit for an existing use renders that use nonconforming in the same sense that a regulatory change which outlawed the existing use would render the existing use nonconforming.
If it were clear that the Hamden concept of "reuse" invoked considerations of intentional abandonment and not the mere passage of time, this court might treat the determination of "reuse" as the equivalent of a finding of nonconforming use and the abandonment of that nonconforming use. However, in the instant case the Zoning Board of Appeals never made a determination that the proposed Hyde School was or was not a nonconforming use. Of even more importance, the local agency never made a determination whether the use as a school was abandoned by Blessed Sacrament Parish. The parish advances two arguments in opposition to a finding of abandonment. First, the parish argues that since it continued an educational use of the property by having religious instruction and an office for its religious education director during the approximately two years between the closing of the Barry School and the proposal for the Hyde School, the educational use was not abandoned. Second, the parish argues that if the religious instruction function was not sufficient to be an "educational" use, and particularly insufficient to be a "school" use, then the CT Page 1105 ongoing efforts to find an educational tenant militate against a finding of abandonment. The court is particularly aware of language in Magnano v. Zoning Board of Appeals, 188 Conn. 225
(1982) in which our Supreme Court held:
 "It has been considered equivalent in meaning to `abandoned,' and evidence of an intent by the owner permanently to cease the use [has been] required. . . ." [citation omitted]. In a case in which the owner had unsuccessfully tried to lease the premises during the specified period this court held that `[a] use . . . is not discontinued . . . by a mere temporary suspension for a reasonable time, for reasons beyond the owners control, where there exists a manifested intention on the part of the owner to resume the nonconforming use as soon as a tenant can be obtained.' [citations omitted]. Although a town may be able to fashion its zoning ordinance so as to make the cessation of a use for a certain period alone a ground for extinguishing a nonconforming use, Westbrook has not done. . . ." Magnano at 228, 229.
While the Supreme Court in Magnano recognized that in 1982 interruption alone might justify the termination of a nonconforming use, that portion of the holding is no longer a statement of the law in view of the Public Act 89-277. Finally the court notes the Supreme Court's conclusion in Zachs:
 "We agree with the trial court that none of the evidence presented to the board would justify a conclusion that the character of the nonconforming use of the tower and appurtenant equipment had changed, despite the increase since 1957 and the number of users from 3 to 11 and the related addition of more equipment having the same purpose as that originally installed. These additions cannot reasonably be viewed as altering the character of the original use as a "radio broadcasting station as permitted by the zoning regulations prior to the 1957 amendment." Zachs at 332. CT Page 1106
The court recognizes that there is widespread neighborhood opposition to the Hyde School which, in all probability, would not be present if Blessed Sacrament Parish were proposing to reopen its own neighborhood parochial school. Nevertheless, it appears to the court that in analyzing the dispute from a land use prospective there is no material difference in terms of nonconforming use analysis or abandonment analysis between an attempt to operate the Hyde School and an attempt to re-establish the Barry Junior High School. The only conceivable difference between the two schools would be if a credible case could be made that the Hyde School was an expansion of a nonconforming use.
While the court recognizes the well intentioned, but emotionally charged, feelings of many parties to this dispute and is reluctant to remand the matter, it appears to this court that no other alternative is available. It is the court's analysis that upon the adoption of the regulation requiring a special permit, the Barry Junior High School became a nonconforming use. This conclusion was never arrived at by the Zoning Board of Appeals. Before the court can adequately review the actions of the Zoning Board of Appeals, that board must reach a conclusion on whether or not, in its opinion, the Hyde School is a protected nonconforming continuation of Barry Junior High School. Equally important, it must make a finding on whether or not a nonconforming use, known as the Barry Junior High School, was abandoned at any point between the closing of the Barry Junior High School in 1992 and the proposed opening of the Hyde School in 1994.
The court recognizes, relying on Zachs, that the simple addition of numbers cannot be viewed as "altering the character of the original use." A change in the character of use can be an impermissible expansion of a nonconforming use. It appears to the court that a change from the Barry School to the Hyde School, following a two year search for a new tenant is unlikely to be a change in the character of a nonconforming use. If however, the change is from the Blessed Sacrament Parish religious education activity to the Hyde School then it appears that the Zoning Board of Appeals must examine the question of whether there has been a change in the character of the use.
The court, after hearing thereon, reverses the determination the Hamden Zoning Board of Appeals. The court finds that the board in reviewing the determination of the zoning enforcement officer must make a determination whether or not the proposed Hyde School is a valid continuation of the Barry Junior High School. Further, CT Page 1107 the board must determine whether Blessed Sacrament Parish abandoned the use of its property for educational purposes.
The court by,
Kevin E. Booth, Judge