[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: PLAINTIFF'S APPLICATION FOR TEMPORARY INJUNCTION
The plaintiffs, the Town of Stonington ("Town"), and Joseph Larkin, Zoning Enforcement Officer, bring this action to temporarily enjoin the defendants, Liberty Entertainment, LLC, ("Liberty"), Nando Sostillo, Richard McCabe, Albert Benedetti, Alfred Tocchio and Gaicchino Faulise, from operating a restaurant featuring "adult theme" entertainment.
The underlying facts of this action are as follows. Defendant Faulise owns a certain parcel of land located at 215 Liberty Street, Pawcatuck, Connecticut ("the property"). The property is located in an LS-5 zone which allows as a permitted use a ] single-family residence or a retail/wholesale building with less than 5,000 square feet. The property was operated as a restaurant/lounge prior to the designation of the LS-5 zone and, therefore, a restaurant/lounge is permitted as a nonconforming pre-existing use.
Defendant Faulise leased the property to Liberty, which gave notice to the Town that it intended to open a buffet style restaurant with "permanent adult theme" entertainment. The Town alleges that the operation by Liberty is an impermissible CT Page 7548 enlargement and expansion of the previous nonconforming use because there is a substantial difference in the character, nature and kind of use proposed.
"A nonconformity is a use or structure prohibited by the zoning regulations but is permitted because of its existence at the time that the regulations are adopted." Adolphson v. ZoningBoard of Appeals, 205 Conn. 703, 710 (1988). The rule concerning the continuance of a nonconforming use "protects the right of a user to continue the same use of the property as it existed before the date of the adoption of the zoning regulations." (Internal quotation marks omitted.) Cioffoletti v. Planning Zoning Commission 24 Conn. App. 5,8 (1991). "[I]t is the indisputable goal of zoning to reduce nonconforming to conforming uses with all the speed justice will tolerate." (Internal quotation marks omitted.) Helbig v. Zoning Commission,185 Conn. 294, 306 (1981).
"As the party claiming the benefit of a nonconforming use the defendants [bear] the burden of proving a valid nonconforming use in order to be entitled to use the property in a manner other than that permitted by the zoning regulations." Cummings v.Tripp, 204 Conn. 67, 82-83 (1987). The burden is on the plaintiff to establish that the defendant's activities amount to an illegal extension of a nonconforming use. Id., 95.
A change in the character of a prior non-conforming use constitutes an unlawful extension of the prior use. Zachs v.Zoning Board of Anpeals, 218 Conn. 324, 331 (1991). Moreover, an owner does not have the right to subsequently change or add to the prior use a new or different one amounting to a drastic enlargement or extension of the prior existing use. Planning Zoning Commission v. Craft, 12 Conn. App. 90, 96, cert. denied,205 Conn. 804 (1987).
The Connecticut Supreme Court has enunciated a three prong fact-specific test for determining whether a nonconforming use has been impermissibly enlarged. "In deciding whether the current activity is within the scope of a nonconforming use consideration should be given to . . . (1) the extent to which the current use reflects the nature and purpose of the original use; (2) any differences in the character, nature and kind of use involved; and (3) any substantial difference in effect upon the neighborhood resulting from differences in the activities conducted on the property." Zachs v. Zoning Board of Appeals, CT Page 7549 supra, 218 Conn. 332. Each of these factors will be considered as to the use proposed by Liberty.
The first prong of the Zachs test requires that the court compare the extent that the current use reflects the nature and purpose of the prior use.
It is undisputed that prior to the defendants' operation, the premises in question were used over the years as a restaurant/lounge by several different operators under a variety of names. In determining if a proposed restaurant is sufficiently similar to the one previously operating on the premises, courts from other jurisdictions have considered the following factors: whether the chief activity would change, whether the hours of operation would change, whether the menu would change, whether the number of people using the establishment would change, whether it would still function as a social gathering place for weddings and graduations and whether the majority of the patrons would continue to arrive at the establishment by car. See, e.g.,Philm v. Washington Tp. 162 Pa. Commw. 126, 638 A.2d 388, 390, cert. denied, 540 Pa. 635, 658 A.2d 789 (1994).
The status of the property at the time it became a nonconforming use was that of a restaurant/lounge serving a full lunch and dinner menu with entertainment provided at night and on the weekends. The food was prepared on the premises and served to the patrons at their tables by waiters and waitresses. The entertainment was either a live band or a disc jockey and occurred almost every night.
The defendants represent that their operation will provide food on the premises in the form of an all you can eat hot meal dinner buffet meal. The food will be brought to the premises from a commissary with food also prepared on the premises. The operation will provide entertainment at night in the form of live exotic dancers with hours of operation from 5:00 pm. to 1:00 a.m. or 2:00 a.m.
The evidence reveals that the proposed use differs in its "nature and purpose" from the use previously employed. Formerly, the primary use of the property was as a restaurant providing food service to the general public. Although entertainment was provided, it was incidental to the food service. The restaurant was open during the lunch hour and offered a full lunch and dinner menu. The food was prepared on the premises and was served CT Page 7550 to the patrons at their tables by waiters and waitresses who took orders. The facility catered to wedding, anniversary and birthday parties. Entertainment did not begin until after 9:00 p. m., when the kitchen closed.
In contrast, the primary emphasis of the proposed establishment is on entertainment with food serving as an incidental part of the operation. The facility will not open until 5:00 p. m. and therefore, will not offer a lunch menu. It will not cater to weddings, anniversaries or other functions. Although the kitchen will be used, food will be prepared off-site and brought to the facility by an outside commissary. The food will be served buffet-style, rather than by waiters and waitresses who take orders and serve the patrons at their tables.
Moreover, only one-fourth of the tables in the proposed operation will be dedicated solely to food service and will permit the presence of minors. The remaining three-fourths of the tables will be provided with "adult theme" entertainment, in addition to the buffet, and will not permit minors to be present. The entertainment will be offered throughout the hours of operation from 5:00 p. m. until 1:00 a.m. or 2:00 a.m. in the morning. These characteristics are indicative of a use resembling more that of a night club rather than that of a full service restaurant.
The second prong of the Zachs test requires that the court evaluate any differences in the character, nature and kind of use employed.
In addition to the above-noted differences in the nature of the establishment, the character of the proposed entertainment is also substantially different from the type of entertainment previously provided. Formerly, the entertainment consisted of live bands or disc jockeys who played music for the listening pleasure of the restaurant patrons. The restaurant patrons danced to the music and the music could be enjoyed by individuals under the age of eighteen. The property was never used as a venue for dancing performances of any kind.
In contrast, the entertainment proposed by Liberty will be female exotic dancers. The dancers will perform dances with an adult theme and will take off their clothes to a point which will not violate the Town's Adult-Oriented Business Ordinance. Furthermore, due to its adult-themed content, the entertainment CT Page 7551 is restricted to individuals over the age of eighteen. Moreover, the form of entertainment proposed renders the premises subject to the Adult-Oriented Business Ordinance which has not previously been applicable to the property.
In support of its position, Liberty cites the case ofIncorporated Village of Williston Park v. 280 Hillside AvenueRestaurant Corp. , 390 N.Y.S.2d 637, 638 (1977), in which the New York Appellate Division determined that the substitution by a bar of scantily clad dancing girls for a rock band with singers did not produce a difference sufficient to comprise a change in use.Williston Park however, did not involve a change from a restaurant/lounge with a primary emphasis on food and an incidental emphasis on entertainment to an operation with food as incidental to the entertainment.
Moreover, Williston Park court offered no authority to support its holding. In Connecticut, the Supreme Court has enunciated a fact-specific test which must guide this court's analysis. See Zachs v. Zoning Board of Appeals, supra,218 Conn. 324. This test requires that the court consider the differences in the "character, nature and kind" of entertainment involved. Applying the criteria in the Zachs case, it is clear that the entertainment proposed by Liberty constitutes a change in the character of the entertainment permitted as a previously existing non-conforming use.
Where property owners have sought to substantially add to, or change the character of, prior nonconforming uses, Connecticut courts have struck down their proposals. In Salerni v. Scheuy,140 Conn. 566, 571 (1954), the court held that the difference in the sale of beer only in a restaurant to the sale of all liquors was sufficient to alter the nature of the enterprise by making it "a more ambitious establishment, partaking to at least some degree of the characteristics of a night club, rather than a quiet family eating place."
Similarly, in the present case, the introduction of scantily clad female dancers is sufficient to alter the nature of the subject establishment by giving it the characteristics of a night club/strip club, rather than a restaurant/lounge. Accordingly, the court finds that the nature and character of the proposed entertainment is substantially different from that previously provided and, therefore, constitutes a change in use. CT Page 7552
As to the third prong of the Zachs test, no evidence or testimony was presented as to the potential adverse effects upon the neighborhood from the proposed adult themed entertainment.
However, the Town's policy reasons for enacting its "Adult-Oriented Business Ordinance" are particularly instructive on the concerns raised by adult-oriented entertainment. In establishing the Ordinace, the Town Meeting found that: "[s]tatistics and studies performed by a substantial number of cities and towns in the United States indicate that: 1. large numbers of persons, primarily male, frequent such adult-oriented establishments . . . 2. persons under the age of eighteen may be attracted to adult-oriented establishments and seek to enter or loiter about them without the knowledge or permission of their parents and guardians; and 3. male and female prostitutes have been known to frequent such establishments in order to provide sex for hire to the patrons. . . ."
These findings indicate that the prior uses of the property, which operated outside of the purview of the Adult-Oriented Business Ordinance regulations, would be less offensive to the surrounding residents than the use proposed by Liberty.
For the reasons stated above, the court finds that defendants' proposed use of the property does not qualify as a permissible intensification within the scope of the valid nonconforming use. Accordingly, the plaintiff's petition for a temporary injunction is granted.
Hendel, J.