ELIZABETH M. HALL *v.* PETER V. BRAZZALE
(11375)

DUPONT, C. J., FOTI and FREEDMAN, Js.

Argued February 18—decision released May 18, 1993

*David B. Losee,* with whom, on the brief, was *Holly Jean Bray,* for the appellant (defendant).

*Ralph G. Elliot,* for the appellee (plaintiff).

FREEDMAN, J. This is an action brought by the zoning administrator of the town of Salisbury to enforce a cease and desist order against the defendant regarding the storage of contractor's vehicles and equipment on his property in Salisbury. The defendant appeals from the judgment of the trial court granting the plaintiff a permanent injunction prohibiting the defendant from storing more than three pieces of construction equipment on his property. The defendant's central claim on appeal is that his present use of the property as the storage site for *all* of his business vehicles and equipment is legally protected as an intensification of the prior existing nonconforming use of the property as a storage site for *some* of the vehicles and equipment associated with his business. Because we conclude that the defendant's prior existing nonconforming use of his property is as a storage site for his contractor's vehicles and equipment, we reverse the judgment of the trial court.

The parties and the trial court employed an unusual procedure in adducing evidence regarding whether the defendant had a prior existing nonconforming use at the time zoning was adopted in Salisbury and whether that use had been abandoned. The trial court, at the request of the parties, "remanded" those issues to the Salisbury planning and zoning commission. After hearing sworn testimony from fifteen individuals and examining forty-eight exhibits, the commission prepared a report and findings, which were then submitted to the court. The parties raise no challenge to the procedure used by the trial court. Accordingly, we base our decision on the following facts as found by the commission and accepted by the trial court.[1]

---

[1] The defendant did not challenge the factual findings of the commission in the trial court. Neither does he do so in this court. In fact, the defendant has not provided us with a transcript of the testimony or the exhibits presented to the commission, thus precluding any such review.

The defendant does, however, attack the following statement in the trial court's memorandum of decision: "Since the commission acted in this matter

Brazzale Construction Company has been in the contracting business in Salisbury since the 1930s. The original contracting business was primarily in masonry and excavation. Over the years, Brazzale Construction added paving and dropped masonry work from its contracting business.

Three parcels of land on Lincoln City Road in Salisbury are involved in the determination of the issues presented by this case. The parcel referred to as lot 33-34 is the focus of the trial court's injunction at issue in this case.

From the late 1930s until January, 1941, lot 33-34 was the principal and only place of business for Braz-

in a legislative, rather than an administrative, capacity . . . this court is not at liberty to substitute its judgment for that of the commission." (Citation omitted.) Clearly, the commission was not acting in its legislative capacity when it evaluated the defendant's claim to a prior existing nonconforming use of his property. See *Thorne* v. *Zoning Board of Appeals,* 156 Conn. 619, 238 A.2d 400 (1968); T. Tondro, Connecticut Land Use Regulation (2d Ed.) pp. 418–20. This erroneous statement, however, is of little significance in the context of this case.

The appropriate standard of review of a zoning agency's finding that a current use represents an expansion of a prior nonconforming use, however, is "whether that finding is supported by substantial evidence." *Zachs* v. *Zoning Board of Appeals,* 218 Conn. 324, 330, 589 A.2d 351 (1991). Where there is no dispute regarding the subordinate facts on which the board relied in making its determination that the nonconforming use had been expanded, the trial court must assess whether those subordinate facts support that determination. Id., 331. Here, notwithstanding its misstatement regarding the capacity in which the commission acted when it determined that the defendant's nonconforming use had been expanded, the trial court used the proper standard of review. After it accepted the unchallenged facts, the trial court then applied the proper standard of review when it determined that "the commission's findings appear to support [its] conclusions." The defendant, in his brief, seems to recognize this when he notes that "the [proper] scope of review . . . [is] whether the [commission] properly stated the law and properly applied it to the facts of the case." Consequently, the defendant's challenge to an isolated misstatement of law in the trial court's memorandum of decision will not necessitate a reversal of the trial court's judgment where that misstatement did not affect its review of the actions of the administrative agency.

zale Construction. In 1941, a parcel known as lot 41 was purchased. Most of the business' equipment was moved from lot 33-34 to lot 41. Some materials and, occasionally, some equipment used by Brazzale Construction continued to be stored on lot 33-34. In January, 1953, a parcel known as lot 25-1 was purchased. Lot 25-1 then became the principal place for the storage of Brazzale Construction's equipment and materials. As a result of the purchase of lots 41 and 25-1, equipment and material storage on lot 33-34 became incidental and subordinate to the use of lots 41 and 25-1 as storage sites. The business did, however, continue to store materials and equipment on lot 33-34 at different times throughout the year.

In 1959, zoning regulations were adopted in Salisbury. Lot 33-34 was zoned residential. At that time, however, lot 33-34 continued to be used for the incidental and occasional storage of both materials and equipment. The use of lot 33-34 was clearly secondary to the principal business locations at lots 41 and 25-1. All dispatching, invoicing and related everyday business activity for Brazzale Construction occurred at lot 41, not lot 33-34. Everyday storage of equipment for Brazzale Construction was on lot 25-1, not lot 33-34.

In 1959, lot 34 had two residential buildings with a few accessory outbuildings. Lot 33 had a small barn for the storage of materials. In the early 1960s, the barn was removed and a house was built for the defendant, Peter V. Brazzale. This brought lot 33 to a more conforming use. The lot was used less for the incidental and secondary storage of contractor's equipment than at the time zoning was enacted.

The use of lot 33-34 as a secondary storage site for Brazzale Construction continued into the 1980s. In 1984, Brazzale Construction moved its principal place of business from lots 25-1 and 41 to Millerton, New

York. In 1985, lot 41 was sold. From November, 1984, through May, 1988, Millerton was the principal place of business of Brazzale Construction and the principal site of equipment and material storage. Lot 33-34, however, continued its secondary and incidental use for the business. That incidental use was never abandoned.

In 1988, Brazzale Construction relocated its principal business operations to lot 33-34, making that lot not only the principal storage facility but also the principal place of business, which had been located elsewhere since 1941. In addition, lot 33-34 has become the only site for the storage of the equipment and materials of Brazzale Construction. The occasional storage of some of the equipment on lot 33-34 in 1959 was expanded to the continuous storage of all of the business' equipment.[2] In 1989, the plaintiff directed a cease and desist order to the defendant regarding his storage of contractor's vehicles and equipment on lot 33-34 without a permit.

---

[2] In its report to the Superior Court, the commission stated in pertinent part: "[W]e have determined that contractor's equipment was stored on lot 33-34 as of June 8, 1959, when zoning was enacted. We have found this to be a continuous use but minimal, secondary, and incidental to the principal place of business at lots 41 and 25-1 and later at the Millerton, N.Y., site.

\* \* \*

"Finally we have found that the present use is not a continuation of the use as a secondary site for equipment and material storage. This secondary, periodic and incidental use which characterized the non-conforming use in 1959 has been converted to a principal, continuous storage site for equipment and materials and the use of the premises as the principal site of the business. We find this to be a change in the basic character of [the] use as it was known in the neighborhood, and therefore a change in the use, rather than merely an intensification of a prior, non-conforming use. The current character and level of use has been caused not by natural growth of the activities undertaken in 1959 on lot 33-34, but rather by its conversion to a principal storage facility and principal place of business for a business whose principal place of business and storage had always been somewhere else."

The commission concluded, and the trial court agreed, that the defendant's prior existing nonconforming use was limited to the type of secondary storage use made of the property in 1959. Further, because Brazzale Construction owned a total of twelve pieces of equipment in 1959 and, at most, stored only a few of those pieces of equipment on lot 33-34 in 1959, the commission determined that the defendant's legally protected prior existing nonconforming use extended to the storage of no more than three pieces of contractor's equipment on his property. The trial court therefore "grant[ed] a permanent injunction prohibiting the defendant from storing more than three (3) pieces of construction equipment on lot 33-34 Lincoln City Road, Salisbury, Connecticut, without a permit issued pursuant to the Salisbury zoning regulations." There was no order regarding the use of lot 33-34 as the principal place of business of Brazzale Construction.[3]

The defendant challenges the conclusions drawn by the trial court and the commission from the subsidiary facts as they bear on the permissible scope of the defendant's prior existing nonconforming use of his property. The defendant contends that the present use of his property is merely an increase in the amount of storage done on the property when compared to the prior use. We agree.

---

[3] The cease and desist order involved in this case declared that the defendant was in violation of the applicable zoning regulations "by storing contractor's vehicles and equipment without a permit on property you own on Lincoln City Road." The plaintiff's verified complaint seeks enforcement of that cease and desist order. It does not challenge the defendant's use of his property as the principal place of business of Brazzale Construction. Consequently, the location of the defendant's business activity, as opposed to his storage of contractor's vehicles and equipment, plays no role in our review of the trial court's action. Whether those activities are lawful, then, is not before us. We must decide, instead, whether and to what extent the defendant can use his property for the purpose of "storing contractor's vehicles and equipment."

The defendant correctly points out that " 'a mere increase in the amount of business done pursuant to a nonconforming use is not an illegal expansion of the original use.' " *Zachs* v. *Zoning Board of Appeals,* 218 Conn. 324, 331, 589 A.2d 351 (1991); *Helicopter Associates, Inc.* v. *Stamford,* 201 Conn. 700, 716, 519 A.2d 49 (1986). "A change in the character of a use, however, does constitute an unlawful extension of the prior use." *Helicopter Associates, Inc.* v. *Stamford,* supra; *Salerno* v. *Scheuy,* 140 Conn. 566, 571, 102 A.2d 528 (1954). "In deciding whether the current activity is within the scope of a nonconforming use consideration should be given to three factors: (1) the extent to which the current use reflects the nature and purpose of the original use; (2) any differences in the character, nature and kind of use involved; and (3) any substantial difference in effect upon the neighborhood resulting from differences in the activities conducted on the property." *Zachs* v. *Zoning Board of Appeals,* supra, 332.

In this case, the present use is simply an intensification of the prior use. The attempt by the commission and the trial court to limit the defendant's use of his property to a *secondary* storage site for his business vehicles and equipment finds no support in our law. " 'For there to be an existing use, premises must be so utilized as to be known in the neighborhood as employed for a given purpose.' " *Helicopter Associates, Inc.* v. *Stamford,* supra, 713; *Wallingford* v. *Roberts,* 145 Conn. 682, 684, 146 A.2d 588 (1958). " '[A] utilization of the property so that it may be known in the neighborhood as being employed for a given purpose . . . [prescribes] neither the extent nor the quantity nor the quality of the use which may be permitted to continue . . . .' " *DiBlasi* v. *Zoning Board of Appeals,* 224 Conn. 823, 831, 624 A.2d 372 (1993), quoting *Melody* v. *Zoning Board of Appeals,* 158 Conn. 516, 520–21, 264 A.2d 572 (1969). Here, the property was

used in 1959 for purposes of the storage of contractor's vehicles and equipment, and it continues to be used for this purpose. Thus, the current use reflects the nature and purpose of the original use as a storage site. The commission and the trial court improperly defined the change in the character, nature and kind of use by emphasizing a *quantitative* feature of that use, namely, the change from a secondary storage site to the sole storage site. Notwithstanding this attempt to distinguish the former use from the present use, "[s]uch changes cannot reasonably be said to involve differences in the character of the nonconforming use rather than increases in the volume of business within the scope of the original use." *Zachs* v. *Zoning Board of Appeals,* supra, 332–33. Finally, neither the commission nor the court made any findings of adverse effects on the neighborhood from the increase in the number of vehicles and amount of equipment currently stored on lots 33-34.

More of the same, then, cannot be the basis for a finding of an unlawful expansion of a prior existing nonconforming use. It is, instead, the essence of a lawful intensification of a prior existing nonconforming use. Thus, in *Helicopter Associates, Inc.* v. *Stamford,* supra, our Supreme Court concluded that "merely casual" use of property as a heliport at the time of a zone change prohibiting such use was nonetheless sufficient to afford the property owner the right to continue to use his property as a heliport on a regular basis, as long as the plaintiff's use did not alter its classification for state licensing purposes. Likewise, in *Planning & Zoning Commission* v. *Craft,* 12 Conn. App. 90, 529 A.2d 1328, cert. denied, 205 Conn. 804, 531 A.2d 937 (1987), this court concluded that the transition from part-time, but year-round, use of a dwelling to full-time, year-round occupancy was not an impermissible extension of the prior existing nonconforming use. Because "[t]he non-

conformity of use [in *Craft*] was created by the year-round use of the premises, not by whether such use was part-time or full-time"; id., 97; we concluded that "[t]he 'volume' of use has been increased, but the 'scope' of the nonconforming use has not been increased or extended." Id., 98. "[A] change in intensity . . . is not an acceptable criterion for determining whether a proposed use is a change in use or a continuation of an existing use." *DiBlasi* v. *Zoning Board of Appeals,* supra, 833. Because the activity that the plaintiff seeks to enjoin in this case, namely, the storage of contractor's vehicles and equipment used by the defendant in his business, has always taken place on the property in question, we conclude that the trial court improperly granted the plaintiff's request for injunctive relief.

The judgment is reversed and the case is remanded with direction to render judgment for the defendant.

In this opinion the other judges concurred.