[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] INTRODUCTION
This is an appeal from the decision of the Zoning Board of Appeals of the Town of Darien (Board), dated September 16, 1998. The Board denied the plaintiffs' appeal of a cease and desist order of the Zoning Enforcement Officer dated February 2, 1996. CT Page 9475 The cease and desist order directed the plaintiffs to remove, from the lower level of its restaurant, improvements including floor tile and carpeting, a bar and associated plumbing, imitation marble and other decorative trim on the walls, decorative lamps, a suspended ceiling and paneled glass doors.
FACTS
The plaintiffs, Giovanni Gabriele and Antonio Giordano, are the owners of 1.48 acres of property in Darien, on which sits a building which has been used as a restaurant and a bar since approximately 1876. It has had no other use since then.
Zoning regulations were adopted in 1925. The property is located in the R-1/3 zone and is improved with a substantial commercial restaurant with parking. A commercial restaurant is not permitted in this zone. The status of the restaurant, as a valid nonconforming use, has been recognized by the Board on many prior occasions.
 "The property in question is located in a residential one-third acre zone but has been used as a restaurant with some entertainment and banquet facilities for many years prior to the establishment of zoning regulations and constitutes a legal non-conforming use." R.O.R. 27 at p. 1 — Darien Zoning Board of Appeals, Calendar No. 65-1980.
In 1976, the plaintiffs applied for and received a variance to enlarge the building with an addition. Thereafter, the plaintiffs desired to use part of the lower level of the restaurant for a holding area/reception area and a cocktail area for banquet patrons. This area had previously been used for a number of restaurant functions including storage, food preparation, a bake shop, meat cutting, and a part of it was used for a reception area and restrooms. The 1976 variance approval included a specific condition that the plaintiffs not serve more than 330 people at one time for a banquet, nor book more than one banquet at a time where the overall total would exceed the total of 330 persons. No evidence was presented to the Board that the plaintiffs had violated this condition. The plaintiffs agreed to continue to comply with this limit and to use the area as a reception area while the banquet rooms were being prepared, thereby assuring the Board that no additional banquet patrons would be served. The defendant indicated a concern with its CT Page 9476 enforcement problem in that it would be difficult to police the use of the lower level.
The defendant acknowledged that:
 The proposed use for the lower level would be a restaurant use. ["C.H."= Court Hearing 4/30/99] (C.H. Tr. 6);
 The restaurant has been a legal nonconforming use since 1925; (C.H. Tr. 6, 21);
 The restaurant and tavern have been located-on the site since the late 1800s, (C.H. Tr. 21) and the entire building has always been used as a restaurant. (C.H. Tr. 36);
 Plaintiffs' current operation of the restaurant remains a legal non-conforming use. (C.H. Tr. 21);
 The Board, in 1976, granted a variance to permit an addition to the restaurant. (C.H. Tr. 22)
 Since 1976, the building has been used as a restaurant, a catering hall, a discotheque, and a banquet hall. (C.H. Tr. 22);
 Darien's regulations define a restaurant as a "business or use whose principal function is the preparation and serving of food for consumption on the premises within the confines of the building normally served at tables, booths or similar sit-down accommodations", and plaintiffs' business is a restaurant use within the meaning of the regulations. (C.H. Tr. 23);
 Plaintiffs intend to use the lower level as a customer assembly or a cocktail assembly area for customers attending banquets. (C.H. Tr. 24);
 The only condition in the 1976 variance was a limit of 330 banquet patrons, and there was no restriction as to which rooms, or the number of rooms, which could be used. (C.H. Tr. 25-26, 29);
The owner may reconfigure the interior of the restaurant CT Page 9477 if no square footage is added to the "customer-accessible portion" of the "restaurant" (C.H. Tr. 33), though the number of patrons may be increased by adding tables in the dining room. (C.H. Tr. 51);
 Nothing in the Darien Zoning Regulations specifies locations for dining areas, reception areas, kitchens, storage, rest rooms, bars, etc. (C.H. Tr. 37).
In 1996, the Zoning Enforcement Officer issued a cease and desist order directing that certain improvements to part of the lower level be removed. These included removal of floor tile, carpeting, a bar and associated plumbing, a suspended ceiling and glass paneled doors. This order also directed the plaintiffs to cease using this space for serving patrons or for food preparation and that the space be used only for storage. Because the Zoning Enforcement Officer had illegally participated in post public hearing deliberations, the Superior Court sustained the plaintiffs' appeal and remanded the matter for reconsideration.
The plaintiffs submitted a renewed application requesting relief from the cease and desist order or, in the alternative, a ruling that § 383 of the Zoning Regulations permitted the use of the lower level, or for a variance to use the lower level.
After a public hearing on July 22, 1998, the Board denied the application, made findings and issued an order similar to its prior order of February 2, 1996. This order required that the plaintiffs:
 A. Remove tile and carpeting from the entire lower level reception room.
 B. Completely remove the bar area and all associated plumbing and remove all imitation marble and other decorative trim from the wall.
C. Remove the decorative lamps from the walls.
 D. Remove the ceiling which conceals the structural support of the 1st floor and conceals the wiring and lighting.
E. Immediately cease using the room for customer space or for working space for employees. The room was to be CT Page 9478 used only for storage. It could not be used for expansion of the kitchen or the customer accessible area.
F. Replace two sets of glass doors.
G. Use the room only for storage. (R. 5)
The plaintiffs appealed this decision of the Board.
AGGRIEVEMENT
As owners of the property at issue, and the applicants to the Defendant Zoning Board of Appeals, the plaintiffs are aggrieved by the denial of their application. Winchester Woods Associatesv. Planning and Zoning Commission, 219 Conn. 303, 308 (1991);Bossert v. City of Norwalk, 157 Conn. 279, 285 (1968). The Court finds that the plaintiffs are aggrieved and have standing to bring this appeal.
SCOPE OF REVIEW
On appeal from a decision of a Zoning Enforcement Officer (hereinafter "ZEO"), the Board is to make an independent de novo
decision, and the action of the ZEO that is the subject of the appeal is entitled to no special deference by the Board or by the Superior Court on appeal. Caserta v. Zoning Board of Appeals,226 Conn. 80, 88-89 (1993).
In the present case, the ZEO's cease and desist order has now been before the Board twice. The first decision of the Board upheld the order directing the plaintiffs to remove improvements to the lower level, to cease using the lower level for customers and to limit its use for storage, and imposed fines for the violations. This decision was overturned by appeal to the Superior Court because the ZEO illegally participated in the work session/decision making session of the Board.
After reversal and rehearing, the Board revisited the same issues and reached the same result. The reasons included:
 A. Previously, the portion of the basement converted to a reception was used only for storage.
B. No building permits were taken for the work. CT Page 9479
 C. Plaintiffs had advised the Fire Marshall that the lower level would be used for storage and had demolished fire rated walls.
 D. Building permits had been taken only for relocation of bathrooms and bars and these permits prohibited an increase in customer capacity.
E. The building is in a flood zone.
 F. The space in question "could increase capacity. No additional occupancy has been permitted" [emphasis supplied].
 G. The construction was in violation of the stipulations of the 1976 variance approval in Calendar 22-1976.
The Board ordered the plaintiffs to remove all improvements made without the benefit of permits.
As a general rule, the Board is entrusted with the function of interpreting and applying its own zoning regulations primarily because it is in the most advantageous position to do so. NewLondon v. Zoning Board of Appeals, 29 Conn. App. 402, 405 (1992). However, the Board's interpretation must be reasonable, and the zoning authority's action is arbitrary and illegal if the regulation in question is construed beyond the fair import of its language. Double I Limited Partnership v. Planning ZoningCommission, 218 Conn. 65, 72 (1991); Cirullo v. Old Lyme ZoningBoard of Appeals, Superior Court, judicial district of New London at New London, Docket No. 533659 (Nov. 22, 1996, Hurley, J.T.R.), (18 Conn. L. Rptr. 309). The court is not bound by a zoning board's legal interpretation of an ordinance or regulation.Melody v. Zoning Board of Appeals, 158 Conn. 516, 518 (1969).
The ZEO determined that the nonconforming use had been illegally expanded. The court's function, on review, is to determine whether the reasons given by the Board upholding that decision are supported by the record and whether these reasons are pertinent to the decision. Molic v. Zoning Board of Appeals,18 Conn. App. 159, 165 (1969); Connecticut Resources RecoveryAuthority v. Wallingford Planning Zoning, Superior Court, judicial district of New Haven at New Haven, Docket No. 280326 (Jan. 8, 1992, Burns, J.). CT Page 9480
CHARACTER OF THE USE:
The first issue to be decided by the court is whether the Board was correct in its determination that remodeling, repairs, and redecoration of the restaurant's lower level was not permitted because these modifications could increase the number of its patrons.
Nonconforming uses have constitutional and statutory protection. O G Industries. Inc. v. Planning and ZoningCommission, 232 Conn. 419, 430 (1995); Helbig v. ZoningCommission, 185 Conn. 294, 306 (1981). General Statutes § 8-2
provides that zoning regulations shall not bar the continuation of any use, building or structure, that existed at the time of the adoption of the regulations. "Where a nonconformity exists, it is a vested right which adheres to the land itself." Petruzziv. Zoning Board of Appeals, 176 Conn. 479, 483, 408 A.2d 243
(1979).
The Board determined that interior repairs to a portion of the restaurant were not permitted, without additional variances, because they might increase restaurant capacity. Neither the facts nor the law of nonconforming uses support this conclusion. Where the general character of the use remains the same, and the proposed change does not involve the addition of a new structure, continuation of the nonconforming use is permitted. Zachs v.Zoning Board of Appeals, 218 Conn. 324, 331 (1991); Salerni v.Scheuv, 140 Conn. 566, 571 (1954).
In deciding whether the proposed activity is within the scope of the existing nonconforming use, consideration is given to three factors: (1) the extent to which the use reflects the nature and purpose of the original use; (2) any differences in the character, nature and kind of use involved; and (3) any substantial difference in the effect upon the neighborhood resulting from differences in the activities to be conducted on the property. Zachs v. Zoning Board of Appeals, 218 Conn. 324,332 (1991). Here, not only is there no substantial difference in the proposed use of the building and premises, but the proposeduse is identical with that for which it has been used since its inception. The building has been used as a restaurant for more than 100 years and for some 50 years prior to the adoption of the Darien Zoning Regulations in 1925. The proposal will continue this use. CT Page 9481
In 1976, the plaintiffs were granted a variance to expand their building, but this application and approval did not include a request for permission to change use of the building. The Board, as part of its approval, included a condition limiting the number of banquet patrons to 330 at any one time. The lower level of the building had been used for restaurant purposes prior to this approval, and continued to be so used thereafter.
The defendant does not dispute that the character of the use of this entire building will remain a restaurant after completion of the proposed interior improvements and renovations.
 "[W]e don't dispute . . . that the proposed use of the existing space would — because of the nature of the use, would violate a continuation of this non-conforming use . . . it's proposed to be used to support the restaurant, as either a holding area, or a cocktail area. But we see it as a proper appurtenance to a restaurant use. We don't claim that it's a gymnasium or some other use that [is] different than the existing nonconforming use." (C.H. 4/30/99, Tr. 6)
As the nature and character of the intended use, after the proposed modifications, would remain the same, this change was within the scope of the existing nonconforming use, and therefore is permitted.
RECEPTION AREA PERMITTED BY REGULATION DEFINITIONS:
The action of a zoning enforcement officer, in issuing a cease and desist order, is arbitrary and illegal if it is contrary to the fair import of the language of the zoning regulations. Double I Limited Partnership v. Planning and ZoningCommission, 218 Conn. 65, 72 (1991); Cirullo v. Old Lyme ZoningBoard of Appeals, Superior Court, judicial district of New London at New London, Docket No. 533659 (Nov. 22, 1996, Hurley, J.T.R.), (18 Conn. L. Rptr. 309).
A review of Darien's zoning regulations demonstrates that the action of its enforcement officer was unwarranted and illegal. The Darien zoning regulations provide definitions of both "restaurant" and "use". A "restaurant" is defined as "[a] business or use whose principal function is the preparation andserving of food for consumption on the premises within theCT Page 9482confines of the building normally served at tables, booths or similar sit-down accommodations but not including a night club or facility whose principal function is entertainment. This shall specifically exclude drive-through operations." Art. 2, § 210. A "use" is defined as "[the] specific purpose for which a building,
structure or land is designed, arranged, intended, or for whichit is or may be occupied or maintained. Art. 2, § 210. [Emphasis added].
The Board, at the argument of this appeal before the court on April 30, 1999, agreed that the proposed use of the lower level would be a restaurant use. By any reading of these definitions, the premises, with or without the reception area, constitutes a restaurant use. Redecorating the lower level, or transforming it from restaurant storage to a restaurant reception area, does not change its "use". With no change in the character or nature of the use, continuation of the use is protected and cannot be prohibited. Zachs v. Zoning Board of Appeals, 218 Conn. 324, 331
(1991); Helbig v. Zoning Commission, 185 Conn. 294, 306 (1981);Salerni v. Scheuv, 140 Conn. 566, 571 (1954).
EXPANSION OR INTENSIFICATION:
The Board contends that the proposed modification would be an illegal expansion of a nonconforming use. To constitute an expansion, there must be a change in character of the use. Zachsv. Zoning Board of Appeals, 218 Conn. 324, 331 (1991). What constitutes a change in the character or nature of the existing use depends on the facts of each case. Armetta v. MiddletownZoning Board of Appeals, Superior Court, judicial district of Middlesex at Middletown, Docket No. 074713 (Jan. 2, 1996,Stengel, J.). In this case, the defendant admitted that nothing proposed will be a change of use. The proposed change of the lower level, from restaurant storage or restaurant reception area, would be merely a shift from one restaurant use to another. Such a change does not constitute an "expansion".
"Where the change of use does not involve the addition of a new structure, courts have found permissible intensifications of the use, as long as the character of the use remains unchanged. See e.g., DiBlasi v. Zoning Board of Appeals, 224 Conn. 823, 833, 624 A.2d 372
(1993) (no change in character of use from a business office to a state adult probation office); Planning and Zoning Commission v. Craft, 12 Conn. App. 90, 97, CT Page 9483 529 A.2d 90, cert. denied, 205 Conn. 804, 531 A.2d 938
(1987) (change from property owner's part-time, year-round use of a residence to full-time, year-round use represented lawful intensification because no change in character of use); State v. Szymanski, 24 Conn. Sup. 221, 224-25, 189 A.2d 221 (1962) (parking of more vehicles at a nonconforming used car lot represents intensified use which does not change the character of the use)." [Emphasis added]. Shell Oil Company v. Planning Zoning Commission of Westport, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 0327130 (Jan. 10, 1997, Hauser, J.).
The proposed shift of use for this restaurant space is comparable to the Zachs change from unused space on the transmission tower to locations for several additional transmitters. Zachs v. ZoningBoard of Appeals, 218 Conn. 324, 331 (1991). In Zachs, the addition of more generators and equipment, the increase in the number of antennae at new locations on the tower and the increase in users did not constitute an expansion because the character of the use did not change.
Here, there will be no expansion because the use will remain the same.
 "We agree with the trial court that none of the evidence presented to the board would justify a conclusion that the character of the nonconforming use of the tower and appurtenant equipment had changed, despite the increase since 1957 in the number of users from three to eleven and the related addition of more equipment having the same purpose as that originally installed. These additions cannot reasonably be viewed as altering the character of the original use as a `radio broadcasting station,' as permitted by the zoning regulations prior to the 1957 amendment." Zachs v. Zoning Board of Appeals, 218 Conn. 324, 332 (1991).
Judge Holzberg's decision in Laviana v. Zoning Board ofAppeals, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 055119 (Nov. 26, 1996, Holzberg,J.) provides another example of an intensification rather than expansion. Lavinia involved construction of a new barn on premises used as a valid nonconforming lumber yard. Judge Holzberg determined that the barn addition would not alter the CT Page 9484 essential nature of the use of the property as a lumber yard and, therefore, the case fit squarely within the intensification rule of Hall v. Brazzale, 31 Conn. App. 342 (1993). "More of the same . . . cannot be the basis for finding an unlawful expansion of a prior existing nonconforming use." Id. at 349.
In the present case, the Board agreed that the plaintiffs could add tables in the existing dining rooms and serve more customers. The Board called this a legal intensification. (Supplemental Brief of Defendant, 5/11/99, p. 6). At the same time, the Board determined that the plaintiffs could not improve or rearrange the lower level if doing so might make room for additional diners. In both situations, though the restaurant use could increase, there would be no change in use. To allow one and not the other cannot be justified. Just as the present restaurant storage is a restaurant use, a reception area, even with a possibility of additional seating, would be a restaurant use, both according to the Darien regulations and within the ordinary meaning of that term. The Board's position, refusing the proposed reassignment of this space from one restaurant function to another, was illegal, arbitrary, and an abuse of its discretion.
The defendant concedes that its position is motivated by a fear that the proposed change might permit additional patrons to use the facility. (C.H. Tr. 72). Neither the Darien regulations nor the 1976 variance contains a restriction on the number ofrestaurant patrons. The 1976 enlargement approval contained only a limit on the number of banquet patrons, not restaurant patrons. No claim is made that the plaintiffs failed to comply with the limit of 330 banquet patrons. Moreover, the proposal for the lower level is for a reception area, not a dining area. The Board's concern about difficulties in policing the number of banquet patrons is not a valid reason for upholding the cease and desist order. Zoning regulations are in derogation of common law property rights and are not to be construed to exclude uses which are not clearly within their express terms. Dowling v. ZoningBoard of Appeals, 187 Conn. 689, 694 (1982). The Board has its remedies should the plaintiffs violate the limit on banquet patrons.
SQUARE FOOT RULE:
The Board next claims that the plaintiffs' right to use its legal nonconforming restaurant is restricted by a square foot rule. It claims that the permitted square footage for each of the CT Page 9485 separate restaurant functions within the premises is fixed by that amount which each used on the date the use became nonconforming. It contends that, although the entire building will continue as a restaurant after the proposed renovations, each function within the restaurant is limited to its square footage on the date the regulations were adopted.
The defendant's position would prohibit any changes to interior layouts or floor plans for modernization or improved efficiency. This would contravene the rule of Zachs and DeFelice
which allows changes for both these reasons. Zachs v. ZoningBoard of Appeals, 218 Conn. 324, 332 (1991); DeFelice v. ZoningBoard of Appeals, 130 Conn. 156, 162 (1943). Were the defendant correct, the eight new antennae, in Zachs, could not have been added to areas of the nonconforming tower not previously used. Similarly, for nonconforming locations presently used as offices, occupants would not be permitted to revise or reallocate the amount of space used for reception areas, library space, secretarial areas, copier/computer rooms and/or for personnel. This would be so even if changes were warranted because of changes in technology, e.g. additional space available because large room for former main frame computer no longer necessary with availability of desk top units and networks. If the defendant was correct, this newly found space could not be used for general office purposes without Board approval. Every change in room size, furniture placement, number of desks, chairs and tables, and the number and type of personnel might require zoning board approvals if a change in square footage were a possibilty. And, in each of these situations the lack of legal "hardship" would likely result in denial of most, if not all, of these applications.
The law of intensification is not, should not and cannot be so restrictive. As long as the proposed use is one of the same character, such changes are, and should be, permitted. The proposal here, without doubt, must be permitted.
The Board's concern about possible increases in the number of patrons is inappropriate and does not justify issuance of a cease and desist order. A mere increase in the amount of business done by a nonconforming use is not an illegal expansion and is permissible. Zachs, supra, 218 Conn. 331-32. "More of the same, then, cannot be the basis for a finding of unlawful expansion of a prior existing nonconforming use. It is, instead, the essence of a lawful intensification of a prior existing nonconforming CT Page 9486 use." Hall v. Brazzale, supra, 31 Conn. App. 349. Similarly, use of improved and more efficient instrumentalities to increase the amount of business is permitted as long as they are ordinarily and reasonably adapted and related to the original nature and purpose of the undertaking. Zachs, supra, 218 Conn. 331.
The recent decision of Brandt v. Schoff also involved a nonconforming restaurant/banquet facility and an attempt to expand one part of its operation. Brandt v. Schoff, Superior Court, judicial district of New Haven at New Haven, Docket No. 339935 (June 8, 1993, Hodgson, J.). The facility previously used a portion of the lawn area for wedding pictures. On an area previously used for parking, the owner started construction of a large complex of gates, columns, staircases, fountains, and a stage-like structure to provide an elaborate setting for wedding pictures. A cease and desist order was issued based upon a claim that the activities constituted an expansion of a prior nonconforming use.
Judge Hodgson determined that since a portion of the restaurant/banquet facility had previously been used for photographs, the change was not an expansion of the use, but rather a change in location and size, i.e. a relocation and increase in volume of the activity previously conducted.
 "[W]hat is proposed is a greater volume and relocation on the site of an existing use, that is, posed outdoor photography, a use that was established by uncontroverted testimony to have taken place in connection with the banquet business since its inception. An expansion in the volume of an activity previously engaged in does not constitute an expansion of the use. DiBlase v. Zoning Board of Appeals, 224 Conn. 823, 833 (1933); Hall v. Brazzele, 31 Conn. App. 342,349 (1993)." Brandt v. Schoff, supra, Superior Court, Docket No. 339935.
As per Zachs, Hall and Brandt, the proposed changes in this case for appearance and efficiency would be permitted as an intensification even if the unintended result were an increase in the amount of restaurant business done by the plaintiffs' restaurant. The effect of the change will be the more efficient use of space of the restaurant, the same use for which this property has been used for some 100+ years. CT Page 9487
PLOT PLAN:
The defendant argued that the plaintiffs may not make any change to the square footage of space used for customer seating from that shown on a floor plan submitted to the Board with its 1976 variance application. The approval did not refer to a floor plan, but to a plot plan which had been submitted with the application for expansion of the building and increase of the footprint. This application sought permission for an expansion of the size of the building, an enlargement of the footprint.
The approval did mention a plot plan, but this reference has no application to the request to improve the lower level. A "plot plan" does not relate to the interior layout of a building, but shows the location and size of buildings. See e.g. L and GAssociates. Inc. v. Zoning Board of Appeals, 40 Conn. App. 784,786 (1996); Furtney v. Zoning Commission, 159 Conn. 585, 587
(1970); Shrobar v. Jensen, 158 Conn. 202, 207 (1969); Kyser v. Zoning Board of Appeals, 155 Conn. 236, 242 (1967); Booth v.Manchester Board of Appeals, 151 Conn. 358, 360 (1964); Mills v.Town Plan Zoning Commission, 145 Conn. 237, 242 (1958), DelBuono v. Zoning Board of Appeals, 143 Conn. 673, 675-76 (1956);Sacred Heart Univ. v. Zoning Board of Appeals, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 334198 (Feb. 6, 1998, Cocco, J.); Stanley v. Trumbull Planning ZoningCommission, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 324982 (Jul. 1, 1997, Belinkie, J.T.R.); Conn. State Reg. § 22-395-81.19, Application for inspection, required facilities[1]; Conn. State Reg. § 25-128-62[2]; Conn. State Reg. § 22-395-3.2[3]
Neither the Board's 1976 variance approval nor the Darien Zoning regulations prohibit the plaintiffs from making the proposed changes in restaurant operations within, improvements to, or reallocation of, space within the interior of the building.
DEFENDANT'S AUTHORITIES:
The defendant offers several cases in support of its position that interior alterations to a nonconforming use, without a variance, constitute illegal expansions. The Board's reliance on these cases, however, is misplaced. None of these cases involved a mere reallocation of space and usage within the interior of a nonconforming use. (Wells v. Shelton ZBA, 180 Conn. 193 (1980) CT Page 9488 (trailer park — record unclear as to condition on effective date of regulation); Ackley v. Kenyon, 152 Conn. 392 (1965) (resjudicata — prior court's reference to a map and its layout of spaces for trailers was controlling); Jobert et. al. v. Morantet. al., 150 Conn. 584 (1963) (increase in size of the structure); State ex. rel. Chaloe v. Rowland, 131 Conn. 261
(1944) (change from a beer to an alcoholic beverage permit for a restaurant); Guilford v. Landon, 146 Conn. 178 (1959) (structural changes to an old barn on the premises to be used for the sale of new products and for an office).).
§ 383 DARIEN ZONING REGULATIONS:
Section 383[4] of the Darien Regulations allows a legal nonconforming use to be extended throughout any parts of the building which were designed for such use at the time of the adoption of the Zoning Regulations.
The plaintiffs contend that § 383 permits the proposed changes to the lower level. Though it is not necessary to decide this issue, because this appeal is sustained for the other reasons contained herein, the Court does question § 383's applicability to the lower level since a portion of it was constructed in 1976, well after adoption of the zoning regulations in 1925. The regulation only permits extension to parts of the building which were arranged or designed for such use "at the time of the adoption of the Regulations."
NON ZONING ISSUES:
The cease and desist order was issued on February 2, 1996. Its intent was to halt the plaintiffs' completion of the lower level, to prohibit its use as a reception area and to limit it for storage. It referred to prior warnings by the ZEO to the plaintiffs as to a lack of building and fire code permits and their failure to comply with flood hazard requirements. These matters did not warrant issuance by the ZEO of the cease and desist order or provide a valid basis for the Board to uphold the order. These are not zoning issues, but rather matters within the province of other municipal and state boards and officials, e.g. building officials and building review boards, fire officials and code enforcement boards, and flood, erosion and/or water course boards and officials. These are not zoning issues. The duties of a zoning board of appeals are established by statute. e.g. Conn, Gen. Stat. §§ 8-6 and 8-7, and its powers are limited. Bora v.CT Page 9489Zoning Board of Appeals, 161 Conn. 297, 302 (1971).
CONCLUSION
For the reasons set forth above, the court sustains the plaintiffs' appeal from the defendant's adverse decision.
HILLER, J.