[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs, Morris and Pearl Epstein, appeal from the decision of the defendant, the Town of Lebanon Zoning Board of Appeals (hereinafter the "ZBA"). The ZBA upheld the Lebanon Zoning Enforcement Officer's (hereinafter the "ZEO") denial of a zoning certificate of compliance. In addition, the ZBA denied the plaintiffs' application for a variance.
On February 28, 1998, the plaintiffs applied to the Lebanon Planning and Zoning Commission for a certificate of zoning compliance regarding their intention to subdivide their property located at 410 Norwich Avenue, Lot #9, Zone I, Map #276 in volume 122, p. 146 and volume 78, p. 543, into two separate lots. (ROR: Items 1, 8D). Specifically, the plaintiffs sought to subdivide their existing 4.2 acre lot, which contains two separate buildings, into one lot of 3.1 acres (containing existing shop), and a second lot of 1.1 acres (containing existing garage shop). Although the two existing buildings on the plaintiffs' property violate the minimum buildable area requirements of section 5.4[1] of the Lebanon zoning regulations, the plaintiffs' property qualifies as a pre-existing non-conforming use. (ROR: CT Page 9255 Item 1) The plaintiffs sought a zoning certificate of compliance verifying that their proposed subdivision would be a permissible intensification of the pre-existing nonconforming use.
On April 30, 1998, the Planning and Zoning Commission denied the plaintiffs' application for a certificate of zoning compliance "based on the fact that the proposed two lot subdivision does not leave sufficient land for either lot to meet section 5.4 of the zoning regulations." (ROR: Items 1, 8E). On May 18, 1998, the plaintiffs applied for a public hearing before the ZBA claiming: (i) that the ZEO of the Planning and Zoning Commission committed error in denying their application for a certificate of zoning compliance, (ROR: Item 1); and (ii) that a variance should issue permitting their subdivision with reduced buildable areas. (ROR: Item 15). On June 2, 1998, the clerk of the ZBA notified the plaintiffs of the schedule for a hearing before the ZBA to occur on June 18, 1998. (ROR: Items 2, 6 7). The notice of the public hearing was published in The Chronicle
on June 5, 1998 and June 12, 1998. (ROR: Item 5)
On June 18, 1998, the ZBA held a public hearing and upheld the ZEO's denial of the plaintiffs' application for a certificate of zoning compliance. (ROR: Item 10). The ZBA did not expressly give reasons for its decision,[2] (see ROR: Item 11), but based its decision on the recommendation from town counsel that the plaintiffs' proposed subdivision would create an unacceptable nonconformity. (ROR: Items 10, 12) In addition, the ZBA denied the plaintiffs' request for a variance based on their finding that: (i) the plaintiffs self created their economic or financial hardship, and (ii) the granting of a variance would impermissibly expand the existing nonconformity. (ROR: Items 10, 12, 17). The ZBA published a legal notice of its decision in The Chronicle on June 24, 1998. (ROR: Item 12).
On July 9, 1998, the plaintiffs filed this appeal from the ZBA's decision with an appropriate citation and bond with surety. The parties have submitted briefs, and this court held a hearing on April 21, 1999.
"[P]leading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of a plaintiff's appeal." Jolly, Inc. v. Zoning Board of Appeals,237 Conn. 184, 192, 676 A.2d 831 (1996). "The owner of the property subject to the appeal is aggrieved and entitled to bring an appeal." Zeigler v. Thomaston, 43 Conn. Sup. 373, 376, CT Page 9256654 A.2d 392 (1994), citing Winchester Woods Associates v. Planning Zoning Commission, 219 Conn. 303, 308, 592 A.2d 953 (1991).
The plaintiffs allege that they own the property which is the subject of this appeal, and are aggrieved by the ZEO's denial. Plaintiffs' Appeal, First Count ¶¶ 1, 9. The defendant does not deny that the plaintiffs own the premises. Defendants Answer, ¶ 1. The exhibits and testimony before the ZBA indicate the plaintiffs' ownership of the subject parcel. Accordingly, the court finds that the plaintiffs own the property subject to this appeal and are, therefore, aggrieved.
"Zoning boards of appeal are entrusted with the function of deciding, within prescribed limits and consistent with the exercise of a legal discretion, whether a regulation applies to a given situation, and the manner of its application. . . . In discharging this responsibility, a board is endowed with a liberal discretion, and its action is subject to review by the courts only to determine whether it was unreasonable, arbitrary or illegal." Molic v. Zoning Board of Appeals, 18 Conn. App. 159,165, 556 A.2d 1049 (1989).
The appropriate standard of review of a zoning agency's finding that a current use represents an expansion of a prior nonconforming use, however, is `whether that finding is supported by substantial evidence.' Zachs v. Zoning Board off Appeals,218 Conn. 324, 330, 589 A.2d 351 (1991). Where there is no dispute regarding the subordinate facts on which the board relied in making its determination that the nonconforming use had been expanded, the trial court must assess whether those subordinate facts support that determination." Hall v. Brazzale,31 Conn. App. 342, 344 n. 1, 624 A.2d 916, cert. denied, 227 Conn. 905,632 A.2d 691 (1993).
The plaintiffs appeal on the grounds that the ZBA acted capriciously, unlawfully and abused its discretion in: (1) denying their appeal of the ZEO's refusal to issue a certificate of zoning compliance; (2) impermissibly extending its police powers by enforcing § 5.4 to the plaintiffs' proposed use; and (3) denying their request for a variance.
 A. Issuance of Certificate of Zoning Compliance
The plaintiffs argued before the ZBA that their desire to subdivide their property into two separate lots is permitted CT Page 9257 because of the fact that the existing lot is a pre-existing nonconforming use. The ZBA does not dispute that the plaintiffs' lot, as it presently exists, is permissible as a pre-existing nonconforming use. Though not expressly given as a reason for its decision, the ZBA apparently viewed the plaintiffs' proposal as an unacceptable expansion of the nonconforming use, and therefore, denied their appeal. (Transcript, pp. 23-30; see also ROR: Item 17). Because the subordinate facts are undisputed, this court must only determine whether the facts support the ZBA's conclusion that the plaintiffs' proposed subdivision constitutes an impermissible expansion of a pre-existing nonconforming use. See Hall v. Brazzale, supra, 31 Conn. App. 344 n. 1.
"A nonconformity is a use or structure prohibited by the zoning regulations but is permitted because of its existence at the time that the regulations are adopted." Adolphson v. ZoningBoard of Appeals, 205 Conn. 703, 710, 535 A.2d 799 (1988). The Connecticut legislature has declared that zoning regulations "shall not prohibit the continuance of any nonconforming use, building or structure existing at the time of the adoption of such regulations." General Statutes § 8-2. The purpose of allowing a nonconforming use is to "protect the right of a user to continue the same use of the property as it existed before the date of the adoption of the zoning regulations." (Internal quotation marks omitted.) Cioffoletti v. Planning Zoning Commission, 24 Conn. App. 5, 8, 584 A.2d 1200 (1991).
"It is well settled, however, that nonconforming uses should not be allowed to increase; rather they should be abolished or reduced to conformity as soon as possible. . . ." (Citations omitted.) Armetta v. Middletown Zoning Board of Appeals, Superior Court, judicial district of Middletown, Docket No. 074713 (January 2, 1996, Stengel, J.) (15 Conn. L. Rptr. 547). "Courts have approved proposed uses and structures where they have resulted in mere `intensifications' of the established, but nonconforming, uses or structures. . . . However, where property owners have sought to substantially add to, or change the character of, prior nonconforming uses, courts have struck down their proposals." (Citations omitted.) Id., 550.
"The legality of an extension of a nonconforming use is essentially a question of fact." Connecticut Resources RecoveryAuthority v. Planning Zoning Commission, 225 Conn. 731, 744,626 A.2d 705 (1993). "[W]hile it is true that mere intensification of a nonconforming use is permissible so long as CT Page 9258 the nature of use is not substantially changed, it is generally recognized that the right of a landowner to continue the same kind of use to which the property was devoted on the critical date does not confer on him a right to subsequently change or add to that use a new and different one amounting to a drastic enlargement or extension of the prior existing use." (Internal quotation marks omitted.) Planning Zoning Commission v.Craft, 12 Conn. App. 90, 96, 529 A.2d 1328, cert. denied,205 Conn. 804, 531 A.2d 937 (1987)
In the present case, prior to the time that the relevant zoning regulation was adopted by the Town of Lebanon, the plaintiffs owned the subject parcel of land containing two separate commercial buildings. (ROR: Items 1, 8A). On August 8, 1989, the Town of Lebanon formally adopted section 5.4 of the zoning regulations which essentially provided minimum "buildable area" criteria per lot or parcel of land. (ROR: Item 14). It is undisputed that the existing lot clearly cannot satisfy the minimum contiguous buildable area of section 5.4. It is also undisputed that the subject parcel, as well as the two existing buildings, pre-date the enactment of section 5.4, and therefore, are protected as valid preexisting nonconforming uses. See Defendant's Memorandum of Law, pp. 8-9.
The plaintiffs propose to divide the existing 4.2 acre lot into two separate lots of 3.1 and 1.1 acres each. Each resulting lot would have one existing building and septic system. As the existing lot does not satisfy the requirements of section 5.4, it is clear that the two resulting parcels will also fail to satisfy section 5.4. (ROR: Item 8C) Therefore, instead of one nonconforming lot, the plaintiffs' proposal would create two nonconforming lots. The issue is whether this result is an impermissible expansion or a mere intensification of the prior nonconforming use.
First, the plaintiffs argue that § 5.4 only governs future developments on undeveloped land, and therefore, the ZBA committed error by applying § 5.4 to their proposal. This argument is without merit. "Although the position of the municipal land use agency is entitled to some deference . . . the interpretation of provisions in the ordinance is nevertheless a question of law for the court. . . . The court is not bound by the legal interpretation of the ordinance by the town." (Citations omitted.) Coppola v. Zoning Board of Appeals,23 Conn. App. 636, 640, 583 A.2d 650 (1990). "The words employed by the CT Page 9259 local legislative body are to be interpreted in accordance with their natural and usual meaning . . . and any interpretation that would torture the ordinary meaning of the words to create ambiguity will be rejected. . . . Common sense must be used in construing the regulation, and we assume that a rational and reasonable result was intended by the local legislative body."Spero v. Zoning Board of Appeals, 217 Conn. 435, 441,586 A.2d 590 (1991) (applying ordinary dictionary definitions to language used in ordinance).
The plain language of § 5.4 states that it applies to "each lot or parcel of land to be approved for any development oruse. . . ." Section 5.4 makes no mention that it shall only apply to undeveloped land for future development. The plaintiffs' use of the proposed lots, albeit with pre-existing structures, clearly falls within a "use" to be regulated by the requirements of section 5.4. The ZBA properly decided to apply § 5.4 to the plaintiffs' proposal.
Examination of the plaintiffs' proposal, indicates that it necessarily results in an expansion of the nonconforming use. As presently situated, the portion of the lot on which the buildings are located contains 55,064 square feet of contiguous (not including wetlands) buildable area. See ROR: Item 8C. It is undisputed that although this minimum buildable area falls short of the 60,000 square feet requirement of § 5.4, the plaintiffs' lot is protected as a valid pre-existing nonconforming use. Upon their proposed subdivision, however, one lot (with existing garage) would contain 26,964 square feet of contiguous buildable area, and the other lot (with existing shop) would contain 28,100 square feet of contiguous buildable area. (ROR: Item 8C).
Prior to the subdivision, therefore, the plaintiffs owned one lot with 55,064 square feet of contiguous buildable area, which was permitted as a pre-existing nonconforming use. The subdivision necessarily expands the nonconformity by creating one parcel with 26,964 square feet of contiguous buildable area, and another parcel with 28,100 square feet of contiguous buildable area. Viewing this change on a per parcel basis, as § 5.4 requires, amounts to a drastic reduction in contiguous buildable area. Therefore, the result created by the plaintiffs' proposed subdivision amounts to an impermissible expansion of the prior nonconforming use.
Accordingly, the ZBA did not act capriciously, arbitrarily or CT Page 9260 abuse its discretion in: (i) applying § 5.4 to the plaintiffs' proposal; and (ii) upholding the decision of the ZEO to deny the plaintiffs a certificate of zoning compliance.
 B. Extension of Police Powers
The plaintiffs' next claim for appeal is that the ZBA acted capriciously, unlawfully and abused its discretion in enforcing § 5.4 to the plaintiffs' proposed use. As zoning regulations stem from the State's inherent police power, the plaintiffs argue that the ZBA's enforcement of § 5.4 to the plaintiffs' proposed use must bear some rational relationship to the underlying purpose of that regulation. While the plaintiffs do not dispute that the town may legislate minimum buildable area requirements, and that § 5.4 is a valid regulation, they argue that enforcement of § 5.4 to their particular case bears no rational relationship to public health, safety or welfare.
Specifically, the plaintiffs argue that because each building on their lot is equipped with its own septic system and well, the public health, safety and welfare purposes of § 5.4 are presently satisfied. Furthermore, as a result of the proposed subdivision, the plaintiffs argue, the only change which occurs is the quantity of lots — the buildings, septic systems and wells all remain unchanged. Therefore, according to the plaintiffs, their proposed subdivision will not in any way frustrate the public health, safety or welfare purposes of § 5.4.
The plaintiffs are correct that "zoning regulation has been upheld as a legitimate subject for the exercise of police power provided it has a reasonable relation to the public health, safety and welfare, and operates in a manner which is not arbitrary, destructive or confiscatory." (Internal quotation marks omitted.) Builders Service Corp. v. Planning ZoningCommission, 208 Conn. 267, 289, 545 A.2d 530 (1988) Furthermore, "[w]hether conditions require the degree of regulation imposed by an ordinance is a matter for the judgment of the legislative body of the municipality." (Internal quotation marks omitted.) BlueSky Bar, Inc. v. Stratford, 203 Conn. 14, 24, 523 A.2d 467
(1987).
Because the plaintiffs agree that § 5.4 is a valid police power legislation, this court must determine whether the ZBA acted illegally in deciding to apply the requirements of § 5.4 to the plaintiffs' particular situation. "Generally, it is the CT Page 9261 function of a zoning board or commission to decide within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply." Irwin v. Planning Zoning Commission,244 Conn. 619, 627, 711 A.2d 675 (1998). When acting administratively, "[a zoning commission's] function is to determine whether the applicant's proposed use is one which satisfies the standards set forth in the [existing] regulations and the statutes." (Internal quotation marks omitted.) Kaufman v. Zoning Commission,232 Conn. 122, 150, 653 A.2d 798 (1995). "The . . . trial court [has] to decide whether the board correctly interpreted the section [of the regulations] and applied it with reasonable discretion to the facts." Irwin v. Planning Zoning Commission, supra,244 Conn. 627-28. The burden of proof is on the plaintiffs to demonstrate that the defendant acted improperly. Spero v. Zoning Board ofAppeals, 217 Conn. 435, 440, 586 A.2d 590 (1991).
It has already been determined that the ZBA correctly interpreted and applied § 5.4 with reasonable discretion to the facts. The plaintiffs' contention that § 5.4 does not apply to the facts of its case is belied by their argument and presentation of evidence before the ZBA. The public hearing transcript is replete with plaintiffs' counsel's argument before the ZBA regarding the applicability of § 5.4 to the plaintiffs' proposal. (See generally, Transcript, pp. 9-30) The transcript lacks any evidence or argument submitted by plaintiffs to indicate to the ZBA that § 5.4 is not relevant to the case. The ZBA acted pursuant to the requirements of § 5.4, and had no reason to do otherwise. It is disingenuous for plaintiffs to now argue that § 5.4 has no application whatsoever to their proposal.
Accordingly, the ZBA correctly interpreted § 5.4 and applied it with reasonable discretion to the plaintiffs' proposed use.
 C. Issuance of Variance
The plaintiffs' final claim on appeal is that the ZBA acted capriciously, unlawfully and abused its discretion in denying their request for a variance. The plaintiffs argue that because the only means by which they could comply with § 5.4 is to tear down each of the buildings, they suffer an unusual hardship and are entitled to a variance.
In rejecting the plaintiffs' application for a variance, the CT Page 9262 ZBA stated: "(1) Self created economic hardship, financial hardship not a valid reason to grant variance; (2) Granting variance will expand the non-conformity." (ROR: Item 17).
"When a zoning authority has stated the reasons for its actions, a reviewing court may determine only if the reasons given are supported by the record and are pertinent to the decision. . . . The zoning [commission's] action must be sustained if even one of the stated reasons is sufficient to support it." (Internal quotation marks omitted.) ConnecticutResources Recovery Authority v. Planning Zoning Commission,46 Conn. App. 566, 569, 700 A.2d 67, cert. denied, 243 Conn. 935,702 A.2d 640 (1997). "We have held that the authority of a zoning board of appeals to grant a variance under General Statutes § 8-6
(3) requires the fulfillment of two conditions: (1) the variance must be shown not to affect substantially the comprehensive zoning plan, and (2) adherence to the strict letter of the zoning ordinance must be shown to cause unusual hardship unnecessary to the carrying out of the general purpose of the zoning plan." (Internal quotation marks omitted.) Grillo v. Zoning Board ofAppeals, 206 Conn. 362, 368, 537 A.2d 1030 (1988).
Because the ZBA based its decision to deny the variance upon the "unusual hardship" factor, the court need only determine whether the record supports the ZBA's conclusion that the plaintiffs self created their hardship.
"Proof of exceptional difficulty or unusual hardship is absolutely necessary as a condition precedent to the granting of a zoning variance. . . . A mere economic hardship or a hardship that was self-created, however, is insufficient to justify a variance; . . . and neither financial loss nor the potential for financial gain is the proper basis for granting a variance." (Citations omitted.) Bloom v. Zoning Board of Appeals,233 Conn. 198, 207-08, 658 A.2d 559 (1995). "The hardship which justifies a board of zoning appeals in granting a variance must be one that originates in the zoning ordinance . . . and arises directly out of the application of the ordinance to circumstances beyond the control of the party involved." (Citations omitted.) Pollard v.Zoning Board of Appeals, 186 Conn. 32, 39-40, 438 A.2d 1186
(1982). A property owner's desire to subdivide his property into two lots "is self-created and, therefore, not a sufficient reason to depart from the zoning regulations." Aitken v. Zoning Board ofAppeals, 18 Conn. App. 195, 206, 557 A.2d 1265 (1989). CT Page 9263
The plaintiffs rely primarily on Kulak v. Zoning Board ofAppeals, 184 Conn. 479, 440 A.2d 183 (1981), to support their argument that they are entitled to a variance. In that case, the Supreme Court upheld the zoning board's decision to grant a variance to purchasers of two lots within a subdivision. The entire subdivision, including the two lots, were established long before the enactment of zoning regulations, and each lot had fifty foot frontage. Prior to the defendants' purchase of these two lots, the town enacted a zoning regulation which required at least sixty foot frontage per lot in order to erect a dwelling thereon. At the time of the defendants' purchase, the original owner of the two lots had erected a dwelling on one of the lots, and the other remained vacant. It was on this second lot that the defendant-purchasers desired to erect a dwelling, and thus sought a variance permitting them to do so.
The trial court determined that "the purchasers' voluntary act in purchasing the property on the gamble that they could procure a variance" was a self-created hardship. Kulak v. ZoningBoard of Appeals, supra, 184 Conn. 481. The Supreme Court reversed, concluding that the original owner could have properly sought a variance for the second lot and, therefore, any subsequent purchaser has the same right. Id., 482. The Supreme Court based its decision on the fact that the zoning regulation created a hardship — sixty foot frontage — after the entire subdivision including the two lots had already been in existence for thirty-five years. Significantly, the court noted, "[w]here the applicant or his predecessor creates a nonconformity, the board lacks power to grant a variance." Id.
In the present case, the plaintiffs existing nonconformity clearly pre-dates the zoning regulation and is a valid pre-existing nonconformity. As previously discussed, the plaintiffs' proposed use would expand the nonconformity. Unlike the purchasers' in Kulak, the plaintiffs' proposal is a voluntary act which creates or expands a nonconformity. See Aitken v.Zoning Board of Appeals, supra, 18 Conn. App. 206 (desire to subdivide is self-created). In addition, there was evidence before the ZBA that the impetus for the plaintiffs' proposal is their goal of selling one of the subdivided lots. Specifically, plaintiffs' counsel stated to the ZBA: "And what really is behind all this, the Epsteins have been renting the garage to Mr. Plecan. Mr. Plecan has now indicated he would like to buy it, and we really want to sell it to him." (Transcript, p. 15). CT Page 9264
The ZBA was confronted with sufficient evidence to indicate that the plaintiffs' proposal was a self-created hardship with an underlying purpose of financial gain. Accordingly, the ZBA did not act illegally or arbitrarily in denying the plaintiffs' request for a variance.
The ZBA did not act illegally, arbitrarily or abuse its discretion in: (i) denying the plaintiffs' appeal of the ZEO's decision; (ii) enforcing § 5.4 of the zoning regulations to the plaintiffs' property; and (iii) denying the plaintiffs' request for a variance.
Accordingly, the plaintiffs' appeal is hereby dismissed.
Schimelman, J.